**Harry H. JESSUP et al.**

v.

**R. Richard CLARK and Donald J. McDonald, Individually and as Special Agents of the Internal Revenue Service of the United States.**

Appeal of Allen BRUNWASSER.

No. 73–1183.

United States Court of Appeals, Third Circuit.

Argued Oct. 11, 1973.

Decided Dec. 12, 1973.

---

Allen N. Brunwasser, Pittsburgh, Pa., for appellant.

Richard L. Thornburg, U. S. Atty., Kathleen Kelly Curtin, Asst. U. S. Atty., Pittsburgh, Pa., for appellees.

Richard H. Seeburger, Pittsburgh, Pa., for the American Civil Liberties Union, as amicus curiae.

Robert Raphael, President, Pittsburgh, Pa., for The Allegheny County Bar Ass'n, as amicus curiae.

Before HASTIE, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Allen Brunwasser, a practicing lawyer, has taken this appeal from a summary adjudication under which he stands convicted of contempt of court.

On October 19, 1972 District Judge Hubert I. Teitelbaum instructed Brun-

wasser, counsel for plaintiffs in a civil action then pending before Judge Teitelbaum in the District Court for the Western District of Pennsylvania, to appear for oral argument at 9:30 A.M. on Friday, January 19, 1973. On Wednesday, January 17, Brunwasser began a trial in state court. He continued to conduct that trial on January 18 and 19, thus failing to appear as directed before Judge Teitelbaum on the morning of January 19.

Shortly after Brunwasser failed to appear, Judge Teitelbaum entered an order instructing Brunwasser to appear at 4:00 P.M. on the same day and to show cause why he should not be held in contempt for his absence that morning. That order also instructed the United States Marshal to take custody of Brunwasser and bring him before Judge Teitelbaum at 4:00 P.M. Although the record is unclear, it seems that Brunwasser was first notified of the show cause order when the marshal arrested him sometime in the afternoon.

At the 4 o'clock hearing Brunwasser requested a postponement in order to consult with counsel and prepare a defense. He also asked Judge Teitelbaum to recuse himself. Judge Teitelbaum denied both requests, but gave Brunwasser an opportunity to explain why he had not appeared that morning.

In responding, Brunwasser stated that he had gone to the state court that morning, believing that he was obligated to do so, that he had "brought the matter [of conflicting commitments] to Judge Clarke's [the state judge's] attention" and that Judge Clarke then instructed him: "'You stay here. We are going on with this case.'" Judge Teitelbaum found this explanation insufficient, adjudged Brunwasser in contempt and sentenced him to 48 hours in county jail, effective immediately. The judge also denied Brunwasser's request for release on bond pending a supersedeas or an appeal.[1] The present appeal

---

1. Before he was removed to jail, Brunwasser filed in the district court both a notice of appeal and a motion for supersedeas. The

district court formally denied supersedeas after the sentence had been served.

was perfected after Brunwasser had served his full 48 hour sentence.

Certain additional statements of fact appear in a memorandum opinion filed by the district judge after sentence had been imposed and served. That opinion states that during the afternoon immediately preceding Brunwasser's scheduled conflicting appearances in state and federal courts, Judge Teitelbaum's office had informed Brunwasser that Judge Teitelbaum had obtained the consent of the President Judge of the state court (not the judge before whom Brunwasser was trying a case) that Brunwasser appear the following morning in federal rather than state court. The opinion also recites that, after the 4:00 P.M. hearing at which Brunwasser was orally adjudged in contempt, but before that adjudication was reduced to writing and before Brunwasser was taken to jail, Judge Teitelbaum had telephoned Judge Clarke. At that time Judge Clarke stated that he had informed Mr. Brunwasser (presumably when Brunwasser appeared for the state proceeding) that he had agreed to postpone the state court hearing, but Brunwasser then told him that the federal matter "had been taken care of".

■ It is agreed that the procedure which Judge Teitelbaum followed is that of summary contempt, as authorized and limited by Rule 42(a), F.R.Cr.P. That rule provides:

> "Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

Rule 42(b) states that all criminal contempts not decided under Rule 42(a) are subject to various due process safeguards, including, inter alia, notice, reasonable time for preparation of a defense, and admission to bail. Although the rule does not expressly provide for it, in our view a defendant is entitled to representation by counsel in a Rule 42(b) proceeding. Cooke v. United States, 1925, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767; Argersinger v. Hamlin, 1972, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530.

■ At the outset, the government argues that this appeal is moot because Brunwasser has fully served his sentence. Two considerations dictate rejection of that contention.

First, the Supreme Court has narrowly restricted the application of the mootness doctrine in cases which attack criminal convictions. In Carafas v. LaVallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554, a unanimous court held that the petitioner's final unconditional release from prison did not moot his habeas corpus attack. The court ruled that serious collateral consequences of the conviction, such as prohibitions against holding certain offices or engaging in certain businesses, sufficed to prevent mootness. 391 U.S. at 237–238, 88 S.Ct. 1556.

Brunwasser suggests that his conviction may well have a res judicata effect in professional disciplinary proceedings that may be brought against him. Although it is far from clear that this summary conviction would be given such effect, this court cannot declare with assurance that it will not. Further, there is a greater likelihood that the contempt conviction will at least cause the institution of disciplinary proceedings. Even that consequence should be sufficient to preclude mootness under Sibron v. New York, 1968, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917, where the Court said that a conviction is not moot if there is any possibility that collateral consequences will result from the conviction.

Second, Brunwasser tried to prevent the appeal from becoming moot, but the district judge denied bail and supersedeas and required that he begin serving the 48 hour sentence on Friday afternoon immediately after conviction. It would have been difficult to present the matter properly to this court before Monday. Since that time he has pur-

sued this appeal diligently. In *Sibron, supra,* the petitioner's diligent efforts to obtain review before the expiration of his six-month sentence were found to militate against a conclusion of mootness. 392 U.S. at 51–52, 88 S.Ct. 1889.

This brings us to the merits of the appeal. Because a summary contempt proceeding dispenses with procedural safeguards ordinarily deemed essential to fair criminal trials, decisions of the Supreme Court[2] and several courts of appeals,[3] including this one,[4] have severely constricted the scope of the summary contempt power.

One constraint on the use of Rule 42(a) is a requirement that there be "need for immediate penal vindication of the dignity of the court". Cooke v. United States, *supra,* 267 U.S. at 536, 45 S.Ct. at 395. The defendants in *Cooke* had written and delivered an insolent letter to a district court judge who had just presided over several cases in which the defendants had an interest, and who was about to preside over other such cases. The Supreme Court, reversing summary contempt convictions, carefully distinguished obstructive contempts in open court from other forms of contempt. Disturbance, violence, or disrespectful behavior may be dealt with summarily, if committed in open court, because of the need to vindicate the court's authority on the spot. "When the contempt is not in open court, however, there is no such right or reason in dispensing with" normal plenary procedure. 267 U.S. at 536, 45 S.Ct. at 395.

The Court has preserved the distinction it articulated in *Cooke.* In Re Oliver, *supra* note 2, reversed the contempt conviction of a witness who appeared before a judge sitting as a one-man grand jury in Michigan. The judge-grand jury found the witness in contempt for giving evasive answers to his questions. The inquiry had occurred in chambers, with few people present. Quoting from *Cooke,* the Court made clear that summary contempt power can constitutionally reach "only such conduct as created 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow.' [*Cooke*] [267 U.S.] at 536 [45 S.Ct. 390]." 333 U.S. at 275, 68 S.Ct. 508.

Two more recent cases, Harris v. United States, *supra* note 2, 382 U.S. at 165, 86 S.Ct. 352, and Johnson v. Mississippi, *supra* note 2, 403 U.S. at 214, 91 S.Ct. 1778, reaffirmed, with reliance on *Cooke,* the view that need of immediate action to restore order to an ongoing court proceeding is a prerequisite, both constitutionally and under Rule 42(a), to use of the summary contempt power.

The Court of Appeals for the Fourth Circuit has reversed a contempt conviction on facts remarkably similar to this case. In United States v. Willett, *supra* note 3, an attorney failed to appear for a scheduled hearing. At the rescheduled hearing the judge asked the attorney to explain his earlier absence. The attorney stated that there had been a misunderstanding, but the court rejected that explanation and adjudged him in contempt. The court of appeals reversed. After first stating that failure to appear was not an act committed in the presence of the court, it observed that, in any case, failure to appear did not seem to be an act requiring immediate penal vindication. 432 F.2d at 205.

2. Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; In Re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; Harris v. United States, 1965, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240; Johnson v. Mississippi, 1971, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423.

3. United States v. Meyer, 1972, 149 U.S. App.D.C. 212, 462 F.2d 827 (collecting cases) ; United States v. Willett, 4th Cir. 1970,

432 F.2d 202; United States v. Peterson, 10th Cir. 1972, 456 F.2d 1135; United States v. Marshall, 9th Cir. 1971, 451 F.2d 372. But see In Re Niblack, D.C.Cir.1973, 476 F.2d 930, and In Re Gates, D.C.Cir. 1973, 478 F.2d 998, discusesd at note 7, *infra.*

4. Tauber v. Gordon, 3d Cir. 1965, 350 F.2d 843 (en banc).

In the light of these authorities, the contempt which Brunwasser is alleged to have committed does not fall within the narrow range of conduct that may be punished summarily. There was no disruption of the orderly course of proceedings in progress. There was no affront to the court before the general public, as might occur during a trial, and there were no tactics that required immediate cessation. Indeed, Judge Teitelbaum appears to have recognized that immediate vindication of judicial authority was not necessary, for he did not seek it. He did not instruct the marshal to arrest Brunwasser immediately but ordered that he be brought before the court at the end of the day.[5] His motive for delay, not to interfere with the business of the state court, is laudable, but nevertheless demonstrates that summary procedure was not necessary.

As a second and independent ground for holding that Rule 42(a) should not have been applied, the record shows that this case does not satisfy the facial requirements of the Rule, that "the judge certif[y] that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court".[6] As both the Supreme Court in the *Cooke* case and this court in Tauber v. Gordon, *supra* note 4, have indicated, those requirements are intended to serve as imperfect but tolerable substitutes for the procedural safeguards that a summary proceeding lacks. If the judge did see or hear everything essential to a finding of contempt, so that all of the relevant facts are within his personal knowledge, then the value of a plenary hearing is minimal and, in a proper setting, is outweighed by the "need for immediate penal vindication". A reviewing court can be satisfied that the trial court did see or hear the punished conduct only if the trial court states what that conduct was, and certifies that he saw or heard it. United States v. Marshall, *supra* note 3, 451 F. 2d at 374–375. Such a certificate is no mere formality, because it demonstrates, imperfectly but sufficiently in the narrow set of circumstances in which such procedure is authorized, that the omitted procedural protections could not have produced a different result.

In this case, although it is true that Judge Teitelbaum "saw" that Brunwasser was absent from his court at the appointed time, he did not, at the hearing, have information which was crucial to a determination whether that absence was contemptuous. Although Judge Teitelbaum had been responsibly advised a day earlier that the conflict between federal and state commitments would be resolved, he did not know whether this had been accomplished. Moreover, at the contempt hearing Brunwasser stated that Judge Clarke had directed him to' remain in his court, thus confronting him with an immediate persisting conflict. That was his defense. In these circumstances, Judge Teitelbaum was confronted with an issue of fact that could not be decided on the basis of his own knowledge or observation. That issue made a plenary hearing essential,[7]

5. *Cf.* Johnson v. Mississippi, *supra* note 2. But see Sacher v. United States, 1952, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717, affirming a contempt conviction despite delay, where the trial court delayed so as not to convict an attorney in front of the jury. It has been said however, that *Sacher's* authority is doubtful after Offutt v. United States, 1954, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11. United States v. Meyer, *supra* note 3, 462 F.2d at 837.

6. No document designated as such a certificate appears on the docket. Although some of Judge Teitelbaum's comments in his memorandum opinion may have been intended to serve as such a certificate, the opinion indicates reliance on occurrences that the judge did not see or hear.

7. In Re Niblack, D.C.Cir.1973, 476 F.2d 930, and In Re Gates, D.C.Cir.1973, 478 F.2d 998, are distinguishable, if not incorrectly decided. Those cases held, *Gates* on the authority of *Niblack*, that absence from the courtroom is conduct in the presence of the court for purposes of Rule 42(a). Neither opinion answers any other question. *Gates*, however, strongly suggests that a Rule 42(b) proceeding is required when the excuse for tardiness involves matters which are not within the judge's personal knowledge, but did not decide that question be-

despite Judge Teitelbaum's understandable reluctance to ask a state judge to testify in federal court.

The summary conviction will be vacated as unwarranted by Rule 42(a), both because Brunwasser's conduct, however contumacious it may have been, did not require summary punishment, and because the circumstances of the contempt were not sufficiently within the judge's personal knowledge to warrant elimination of normal due process protections in proving them. Because the accused has served his sentence, he shall not be required to be tried again for failing to appear in federal court as directed. However, this decision shall not preclude any appropriate disciplinary proceeding in the district court or elsewhere to determine whether, at the contempt hearing before Judge Teitelbaum, Brunwasser culpably misrepresented to the court what had occurred between him and Judge Clarke.[8]

cause the appellant did not raise it. 478 F. 2d at 1000. *Niblack* does not discuss the nature of that appellant's excuse.

8. The district court has recognized its disciplinary responsibilities over the members of its bar in its Local Rule 22, and the conflict

between Brunwasser's testimony concerning the statements of Judge Clarke on the morning of January 19 and the statement of Judge Clarke to Judge Teitelbaum on the phone that Brunwasser told him the federal matter "had been taken care of" may very well come before it in this connection.