**UNITED STATES of America,
Appellee,**

**v.**

**Wilbert Eugene PROFFITT, Appellant.**

**No. 73–1756.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 26, 1974.

Decided May 20, 1974.

As Amended July 17, 1974.

Ronald Ervais, Becker, Fryman & Ervais, Philadelphia, Pa., for appellant.

S. John Cottone, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges, and MILLER, District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Our consideration of this case is focused on the extent to which a trial judge may enforce his authority to insist upon an orderly and expeditious trial.

The appeal is from three separate findings of contempt imposed during the course of a prosecution for attempted escape from the Lewisburg Penitentiary for which the defendant Proffitt and one Bagley had been indicted.

From the very beginning of the proceedings, the defendant determined upon a policy of obstructionism in order to delay his trial. His strategy was not to engage in violent or outrageous conduct but to employ a type of passive resistance through noncooperation.

The campaign began with his arraignment on March 15, 1973 when Proffitt refused to enter any plea to the charges brought against him. Through counsel, he then requested the appointment of a psychiatrist, but when the consultation was arranged for the day before trial, the defendant refused to cooperate despite the recommendation of his lawyer.

The selection of jurors for the joint trial of Bagley and Proffitt was scheduled for July 3, 1973. Just before that process was to begin, Proffitt advised the judge that his case could not proceed because the psychiatrist had not made an examination. Furthermore, he stated that he wished to discharge his court-

appointed lawyer and secure other counsel.

The court rejected both grounds for delay and refused to appoint new counsel because of the imminence of trial. When the defendant then announced his intention to represent himself, the trial judge directed that Mr. Orso, his previous counsel, serve on a standby basis. The defendant stated that he would not talk further with his attorney.[1]

The court then proceeded with impaneling of a jury. After the 28 prospective jurors gave brief biographical sketches in open court as was the practice in the district, Proffitt and counsel for Bagley were asked if they had any challenges for cause. Bagley's lawyer said he had none, but Proffitt refused to answer. The trial judge then asked the defendant again if he thought any of the prospective jurors should be disqualified because of their backgrounds, pointing out that the court of its own motion had already dismissed one person who had a relative employed at the prison. Defendant replied, "I don't feel that I wish to pick a jury" and said the clerk could do it. The trial judge then warned the defendant that if he did not answer the question, the court would consider a contempt action and that it had the right to impose a jail sentence of up to six months and a fine of $500.[2] The defendant made a number of evasive statements, purported not to understand, but did not answer the direct question.

In order to fill the vacancy caused by the dismissal of the one juror, another was called. When asked if he had any objection to this juror, Proffitt again refused to cooperate and said that he would not pick the jury.

After the twelve jurors were selected, the trial judge then found Proffitt in criminal contempt and sentenced him to 30 days imprisonment.

Selection of alternate jurors then commenced, and the defendant was asked if he had any objection to those who had been interviewed. Proffitt claimed that he had not been listening, and the judge then requested the prospective alternates to repeat the data which they had previously given.

Again the judge repeated the question and warned the defendant that he might be held in further contempt for failure to answer. Proffitt continued his evasive tactics and did not respond to the direct question. He was then found guilty of a second contempt and sentenced to a consecutive sentence of 45 days imprisonment.[3]

Before testimony commenced, a motion for severance was made by the co-defendant Bagley on the grounds that Proffitt's conduct would be prejudicial to a fair trial. The motion was granted, the Bagley trial went forward, and Proffitt's was postponed.

On July 10, 1973, at the direction of the court, a psychiatrist was sent to the prison to examine the defendant to determine whether he was competent to stand trial rescheduled for a date some two weeks thereafter. Proffitt refused to submit to a psychiatric interview and instead presented to the doctor a written

1. Apparently there was no real animosity between the defendant and his lawyer because at the time the case was eventually tried, defendant admitted there was nothing personal involved.

2. While the defendant's statement probably would have been an effective waiver of his right to challenge for cause, it is obvious that the trial judge wished to forestall a claim by Proffitt that a guilty verdict could not stand because the jury had not been properly selected. Appellate decisions in recent years understandably have caused trial judges to be uncertain as to the effectiveness of a technical waiver by a pro se defendant.

3. These sentences were vacated on July 16, 1973 and reimposed on July 17, 1973 because the district court wished to rectify its omission of July 3, 1973 of failing to advise the defendant of his right to appeal. At that hearing, the defendant was given the opportunity to explain his conduct or to make a statement in mitigation of the offense.

statement alleging that he might incriminate himself.[4]

At a later time, the defendant was given notice of a hearing on a charge of contempt arising out of this latter incident. A hearing was held on August 6, 1973, at which time testimony was taken and the defendant gave his version of the incident. At the conclusion of the hearing the trial judge found defendant to be guilty of contempt and imposed a four month sentence.

The trial of the prison breach indictment ultimately began on August 7, 1973.

This appeal involves two distinct types of criminal contempt. The first category covers the conduct which occurred in the courtroon in the presence of the judge, and the second was that which occurred at the prison when the judge was not present.

■ The misconduct in the courtroom was subject to summary disposition by the court upon a proper certification as provided by Fed.R.Crim.P. 42(a). The procedure followed in this case complied with the rule. Since the sentence imposed was less than six months, no jury trial was required. Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969).

The trial judge treated the refusal to answer questions about the selection of the twelve original jurors as one offense, though two separate and distinct incidents occurred. After that part of the proceeding had been completed and Proffitt had been sentenced, the selection of alternate jurors took place. This was treated as a separate part of the trial and the prospective alternate jurors were required to recite the same type of biographical information as had those previously impaneled. The defendant did not refuse to answer the judge's questions about this group when requested but simply replied that he had not been listening to the jurors.

■ Thus, Proffitt did not take the position at that time of "carving out" an area of inquiry which he had previously delineated, the situation in Yates v. United States, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). His response prompted the trial judge to ask the prospective jurors to repeat their background information. Only after this had been done did Proffitt assert that he didn't care who would be picked. What the defendant had accomplished therefore was to cause further delay in the trial before returning to the ground of his original objection. If he had "carved out" an area of refusal to respond to questions, it was waived by this misleading answer to the judge's question. Furthermore, the trial judge perceived Proffitt's tactics not so much as an attempt to withhold information as was true in Yates v. United States, *supra*, but rather as another separate and distinct action to delay the trial. Failure to counter that tactic would have led to further obstruction. *See* In

---

4. "Criminal No. 022373–15. Reasons for not submitting to examination.

"I feel that the court did in effect conclude that I was competent to stand trial when the court proceeded with the selection of the jury on July 3, 1973, which now places me in the position of self-incrimination should I disclose any facts about myself to any officer or employee of the court concerning this case. I stand on my Fifth Amendment right against self-incrimination.

"I also feel that the court is no longer concerned with whether or not I was mentally incompetent at the time the alleged crime was supposed to have been committed, and that the court's main intent is now to cover its mistake of July 3, 1973 of concluding me competent to stand trial, which conclusion will be reversible error should appeal in this case become necessary.

"The order issued July 10, 1973 is clearly an attempt of the court to find me competent to waive my right to counsel, which counsel has a definite conflict of interest in this case under the circumstances; therefore, I am my own counsel and under my own advise refuse to permit myself to examination that I feel would be a violation of the Fifth Amendment and a hindrance to the defense of my case.

"(Criminal No. 022373–15) The trial of this case is begun. /S/ Wilbert Eugene Proffitt."

re Chase, 468 F.2d 128 (7th Cir. 1972); United States v. McCloskey, 359 F.2d 788 (2d Cir. 1966).

■ Rule 42(b) provides for disposition upon notice and hearing when the contempt was not committed in the presence of the court. Pursuant to these requirements, Proffitt was duly given notice of a hearing, appeared at that time, and participated in his defense by cross-examination of the government witnesses and presentation of his own testimony. Here again, the sentence imposed was less than six months. Since different procedures were followed and the actions forming the basis for the contempt grew out of separate and distinctively different incidents, there need be no cumulation of the sentences. Therefore, even though the sentences for the three separate contempts totaled 6 months and 15 days, no jury trial was required for any or all of the offenses. *See* United States v. Seale, 461 F.2d 345 (7th Cir. 1972).[4(a)]

Although his counsel on appeal claims that defendant did not receive a copy of the order of July 10, 1973 before the psychiatrist appeared at the prison, there is no evidence to support such an assertion, and the defendant's prepared statement which he read to the doctor on July 11, 1973 refers specifically to the order. It is significant that this point was not raised at the hearing in the district court. After a thorough review of the transcripts of the proceedings in the district court, we find no procedural irregularities in the contempt proceedings in either category.

■ Basically the issue which underlies this case is the extent to which the trial judge may use the power of contempt to prevent delay in the trial of a case. It is unfortunate that the use of the term "contempt of court" has tended to convey the erroneous idea that punishment is to be imposed because of an affront to the personal dignity of the judge. The correct view of the nature of the offense which emphasizes the importance of the need to be served is found in the opinion of Lord Justice Salmon in Morris v. Master Of The Crown Office [1970] 2 W.L.R. 792, 801:

> "The sole purpose of proceedings for contempt is to give our courts the power effectively to protect the rights of the public by insuring that the administration of justice shall not be obstructed or prevented."

The American Bar Association's "Standards Relating to the Function of the Trial Judge," § 7.1, likewise explains the nature of the judge's authority:

> "Inherent power of the Court.
>
> "The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interest of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings."

■ It is true that when the defendant's actions in this case are viewed as isolated incidents, and in comparison with some of the more violent episodes of courtroom disruption of recent years, *e. g.,* Mayberry v. Pennsylvania, 400 U. S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), and In re Dellinger, 461 F.2d 389 (7th Cir. 1972), the happenings seem mild and perhaps not so willful or flagrant as to merit punishment by incarceration. But the incidents here were not the results of inadvertence, ignorance, or misguided advocacy. The trial judge was confronted with what he perceived to be a deliberate, calculated plan to delay the trial and thus obstruct the

---

**4(a).** In Codispoti v. Pennsylvania, — U.S —, —, 94 S.Ct. 2687, 2692, 40 L.Ed.2d — (1974), the Supreme Court said, "That the total punishment meted out during trial exceeds six months in jail or prison would not invalidate any of the convictions or sentences, for each contempt has been dealt with as a discrete and separate matter at a different point during the trial."

work of the court. The fact that threats, shouting, or violence were not employed did not make the tactics less effective. Proof of this is that as a result of the defendant's intransigence his trial had to be severed and then continued for several weeks, all of which resulted in unnecessary delay and prolongation of total trial time. A molasses defense is often better than a muscular one.

The defendant's protestations of inability to understand, for example, what the trial judge wished him to do in connection with the selection of a jury may appear not unreasonable when reading the unexpressive record, but appellate courts should not forget that credibility looms large here and the printed words do not reveal the smirk, the sneer, or the clearly felt, though perhaps nonarticulated intent of the defendant.[5]

The defendant cites the case of Pennsylvania v. Fletcher, 441 Pa. 28, 266 A. 2d 727 (1970), as authority for the proposition that he should not be found in contempt for failing to answer the trial judge's question. The state Supreme Court held that a layman should not always be held to the same standards as an attorney when failing to respond to what may seem unfair questions of legal strategy. We need not consider that case at any length because it is clearly distinguishable from the one *sub judice* where the conduct has been found to be not innocent but motivated by a plan to obstruct and delay.

Appellate courts must be particularly careful to see that the rights of a defendant have not been violated when the trial judge exercises his summary power to punish. This does not mean, however, that we must undermine and curtail the power of the trial court so that it loses its ability to function effectively. Conditions in the cool, intellectual atmosphere of an appellate courtroom where counsel advance reasoned arguments are quite different from those in the trial arena. Criminal defendants, particularly, are most unwilling participants in the judicial process and understandably are more interested in other considerations than the orderly disposition of their cases.

The trial judge is called upon to apply an understanding of the defendant's viewpoint, make certain that his rights are not violated, and strain the outer limits of patience. Nonetheless, the judge must be firm as well as fair because otherwise he is derelict in his duty to properly administer the laws.

The record in this case indicates that the trial judge was restrained, did not act hastily or out of personal pique, and issued fair warnings to the defendant in the courtroom before adjudging him in contempt. We find no need to disturb the findings and sentences of contempt with respect to the two incidents in the courtroom.[6]

The circumstances surrounding the failure to cooperate with the psychia-

---

5. At one point the judge remarked, "Well, it is my view that Mr. Proffitt's attitude is one of intentionally attempting to thwart the process of this court, and I'm not going to permit it." On another occasion the judge said, "Well, you see, you are not trying to pick this jury, and you have discharged your counsel, and your objective is to delay this whole proceeding. Now you are not going to get away with it."

In the Certificate and Order dated July 5, 1973, the district judge stated that "It is the view of the court that the defendant intentionally set out on July 3, 1973 to obstruct the trial of his case and that the court was obliged to punish his contumacious behavior so that the administration of justice would not be thwarted either during the drawing of the jury or the subsequent trial itself."

At the hearing on July 17, 1973, after advising the defendant that there would be a hearing on his failure to submit to psychiatric exam pursuant to the order of July 10, 1973, the court said, "And if you are in violation of that order, the court is going to impose another sentence for contempt, and the way you are smirking at me indicates that you think you are going to be able to thwart this court's operation, but you are not. I'm going to continue to impose contempt sentences just as long as you violate the orders of this court."

6. When a jury was selected for the rescheduled trial, the defendant cooperated in the process and intelligently exercised his right to challenge several of the prospective jurors for cause.

trist on July 11, 1973 do present some different considerations, but the decision reached by the trial judge after a hearing will be affirmed.

■ At the hearing on August 6, 1973, the defendant candidly admitted that he had been wrong to refuse to cooperate with the psychiatrist. He said:

> "At the time I didn't know I had to submit to such an examination. Since then, I've looked into some lawbooks and I know I should have submitted to the examination, but I didn't feel like I was in contempt."

Nevertheless, Dr. Einig, one of the government witnesses, testified that he talked to Mr. Proffitt on the afternoon before the psychiatrist was to visit and advised him that there was a possibility of contempt of court charge if the defendant did not cooperate.[7] Proffitt claimed that he decided not to cooperate on the basis of legal advice from another inmate. The question of the credibility of the defendant at the hearing was important, and the judgment on that crucial issue was entrusted to the trial judge. There is nothing in the record of this case which leads us to think that the trial judge was other than justified in refusing to accept Proffitt's version of the incident and instead deciding that this was one more chapter in the defendant's overall strategy of obstruction.

The judgments of the district court will be affirmed.

JAMES HUNTER, III, Circuit Judge (concurring in part and dissenting in part):

I agree with the majority's affirmance of the first summary contempt citation under Rule 42(a) and I also agree with its affirmance of the finding of contempt that occurred on August 6, 1973. However, I do not believe that the second summary contempt citation, that is, the one relating to appellant's lack of cooperation in the selection of alternate jurors, should be affirmed. Accordingly, I feel constrained to register my partial dissent.

The refusal to answer separate successive questions of a court can undoubtedly support separate findings of contempt. However, this Court has indicated that,

> "[w]here the separate questions seek to establish but a single fact, or *relate to but a single subject of inquiry*, only one penalty for contempt may be imposed."[1]

I feel that this rule should be applied here.

In this case, appellant's lack of response to two separate questions formed the basis for the district court's two summary contempt citations. While the district court phrased and rephrased the two questions in slightly varying ways, it essentially made the following inquiries: 1) Do you object to any of the prospective jurors because of their backgrounds? and 2) Do you object to any of

---

7. The defendant also argues that the testimony at the contempt hearing by the psychiatrist who had been appointed to examine him violated 18 U.S.C. § 4244 (1949), which provides in part:

"... No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding ..."

The psychiatrist's testimony did not violate this section because no § 4244 examination

had taken place. Proffitt simply delivered his written statement to the psychiatrist (see note 4) and discussed his reasons for refusing to undergo the examination. The psychiatrist did not pursue the interview and did not formulate a report on Proffitt's sanity or mental competency. The testimony only concerned Proffitt's refusal to submit to the psychiatric examination, and hence there was no breach of § 4244.

1. United States v. Orman, 207 F.2d 148, 160 (3d Cir. 1953), *cited with approval in*, Yates v. United States, 355 U.S. 66, 73, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).

the prospective alternate jurors because of their background? The issue to be resolved is whether or not these two questions "relate to but a single subject of inquiry"? I believe they do.

While the two questions are distinguishable as relating to different groups of prospective jurors, I do not believe that our ability to make this technical distinction should be dispositive. The more important consideration is whether the party being questioned could have reasonably viewed the two questions as related to separate subjects.[2]

When the issue is viewed from this perspective, I can only conclude that appellant perceived the selection of jurors and alternate jurors as part of a single process—that is, the jury selection process.[3] Thus, when the questioning switched from the demand that he object to jurors, to the demand that he object to alternate jurors, he perceived no change in the "subject of the inquiry." This new line of questioning, from appellant's viewpoint, was but a reiteration of the original demand—that is, that he participate in the selection of jurors.[4] As a result, I would hold that the questions giving rise to appellant's two acts of defiance related to a single subject of inquiry and that the second finding of contempt cannot stand.

Moreover, I note that the same result appears to be dictated by a slightly different rule of law first enunicated in Yates v. United States, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). In that case, the court held that once a witness has "carved out" an area in which he refuses to respond to questions, the refusal to respond to further questions that are within that defined area will not support additional contempt citations.

The application of this rule here seems apparent. When asked repeatedly to participate in the selection of jurors, appellant responded by saying at various times, "[t]he clerk can do it. I have no wish to pick a jury." (July 3, 1973, Transcript at 2); " . . . I have nothing to do with the jury. . . . You all can pick it." (Tr. at 5); "I am not going to pick the jury. . . . I don't think I am competent to pick a jury." (Tr. 6). In my opinion, these statements indicate a clear intent to "carve out" as an area of nonresponse all questions that require him to participate in the jury selection process.

Furthermore, while we would be technically correct if we held that appellant's statements failed to specifically extend his defiance to questions that related to the selection of *alternate* jurors, such a holding would not only ignore appellant's intent, it would also tend to undercut the policies that form the basis for the Court's opinion in *Yates*.[5] Appellant is not a lawyer and nothing in the record

---

2. Furthermore, since a summary contempt proceeding under Rule 42(a), "dispenses with procedural safeguards ordinarily deemed essential to fair criminal trials," its scope is "severely restricted." Jessup v. Clark, 490 F.2d 1068, 1071 (3d Cir. 1973). As a result, I feel that any substantial doubt on the issue should be resolved in appellant's favor. United States v. Kamin, 135 F.Supp. 382 (D.Mass.1955).

3. Appellant's underlying motive in refusing to participate in this aspect of the proceedings might have been to obstruct their progress (as the district court found), to effect a waiver of his right to challenge jurors, or to simply avoid a confusing situation. However, regardless of his underlying motive, the absence of any perception on his part of a change in subject matter when the district court's focus shifted from the selection of

jurors to the selection of alternate jurors appears plain from a reading of the record.

4. Indeed, the district court's phrasing of the second question at times suggests that even it did not perceive the selection of jurors and alternate jurors as separate matters of inquiry. On two occasions, the district court asked that the defendant exercise his right to object to "jurors" when, in fact, the jurors had already been selected and all that remained was the selection of alternate jurors.

5. In that case, the court explained its holding as follows:

"The Government admits, pursuant to the holding of United States v. Costello, 2 Cir., 198 F.2d 200, that only one contempt would result if Mrs. Yates had flatly refused on June 26 to answer *any* questions and had maintained such a position.

indicates that he has a high degree of legal sophistication. Therefore, he should not be held to a literal reading of the words he uses when he "carves out" an area of non-response.[6] Moreover, I again note that we are dealing with summary contempt proceedings so that any substantial doubts should be resolved in appellant's favor.[7] As a result this second rule of law leads me to the same conclusion—that the second summary contempt citation is improper.

Finally, I feel constrained to note that while I concur in the affirmance of the first summary contempt citation, I feel the issue is extremely close. As this court recently noted,

> "summary contempt power can constitutionally reach 'only such conduct as created "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public" that if "not instantly suppressed and punished, demoralization of the court's authority will follow." ' " Jessup v. Clark, *supra*, 490 F.2d at 1071.

As I read the transcript of the proceedings that occurred on July 3, 1973, I find it difficult to conclude that appellant's conduct created such a serious threat. However, I do note that the events occurred in the presence of the prospective jurors and that the district court had the benefit of demeanor evidence in judging appellant's intentions and his effect on the proceedings. As a result, I cannot conclude that the district court was clearly erroneous when it found that appellant intended to obstruct the proceedings or when it concluded that the behavior had to be immediately suppressed.

However, I do feel that the district court may have had an alternate route available to it. A summary contempt citation is an extreme remedy and should only be used when more moderate means fail. In this case, appellant's responses to the court, *supra* at page 1131 suggest the possibility that he was merely trying to waive his right to participate in the selection of the jury.

Despite this plausible interpretation of appellant's statements, however, no attempt was made by the district court to ascertain whether this was his true intent nor was any attempt made to lay the basis for a knowing waiver.[8] I believe the district court could possibly have acted on the assumption that appellant's responses constituted a noncontemptuous waiver and have pursued this course until its inappropriateness became clear. Only then would it have been necessary to resort to a summary contempt citation. While in fairness to the district court, I should note that it may have acted in response to circumstances that are not apparent from the record, I do urge generally that use of the summary contempt power be viewed as an extreme step, to be taken only when other more moderate methods of dealing with disruptive situations have failed.

---

We deem it *a fortiori* true that where a witness draws the lines of refusal in less sweeping fashion by declining to answer questions within a generally defined area of interrogation, the prosecutor cannot multiply contempts by further questions within that area. *The policy of the law must be to encourage testimony; a witness willing to testify freely as to all areas of investigation but one, should not be subject to more numerous charges of contempt than a witness unwilling to give any testimony at all.*" 355 U.S. at 73. (Emphasis added.)

**6.** I believe that the majority fails to take this into account and that this causes them to interpret appellant's words in an overly technical and narrow way. As a result, technical legal consequences never contemplated by appellant are drawn from his specific words and actions. *See* majority opinion at page 1127.

**7.** See note 3 *supra.*

**8.** Moreover, the fact that it may be difficult to establish the technical requirements for a knowing waiver should in no way excuse a district court from undertaking this task when a defendant wishes to exercise his right of waiver. For this reason I disagree with any contrary conclusion that might be drawn from footnote 2 of the majority opinion.