386 A.2d 971

**COMMONWEALTH of Pennsylvania**

**v.**

**Floyd GARRISON.**

**Appeal of Bruce SAGEL, Esquire, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1977.

Decided May 5, 1978.

Defender Assn. of Phila., Benjamin Lerner, Defender, John W. Packel, Chief, Appeals Div., Harry S. Tischler, Asst. Public Defenders, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Randolph Goldman, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

While representing a defendant accused of rape, statutory rape, and corruption of a minor, appellant Bruce Sagel,

▬▬▬▬▬▬

Esquire, was twice summarily held in criminal contempt. The trial court, Judge James T. McDermott, fined appellant $200 for the first offense and $50 for the second. Appellant contends that his contempt convictions are not supported by sufficient evidence.[1] We agree, reversed judgments of sentence and discharge appellant.[2]

Appellant, an attorney for the Defender Association of Philadelphia, acted as defense counsel for Floyd Garrison in a trial held from March 24, 1976 to March 29, 1976. The Commonwealth sought to prove that Garrison had raped the 13 year-old daughter of the woman with whom Garrison had been living. Several times during the first day of trial, the court accused appellant of misconduct, but did not hold him in contempt until the complainant's mother took the witness stand. At that time, the district attorney requested that the court order Garrison to stand:

"MR. CUNNINGHAM: Would the court instruct the defendant to stand?

THE COURT: Has this witness been sworn?

MR. CUNNINGHAM: Yes, sir.

THE COURT: Very well. Have the defendant stand. (The defendant rose).

DIRECT EXAMINATION

BY MR. CUNNINGHAM:

Q. . . . do you know this man standing now in this courtroom, to my left?

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(5), 17 P.S. § 211.202(5) (Supp.1977).

2. In view of our disposition, we do not consider appellant's assertion that both summary convictions for criminal contempt denied him due process because (1) the contempt charge did not sufficiently specify the underlying facts to permit review of the first conviction; (2) appellant denied the court's statement of the facts underlying the first conviction; (3) impermissibly long delay occurred between the second alleged contemptuous conduct and imposition of contempt; (4) the convictions were without hearing, notice or other elements of due process; and (5) the trial court was so deeply embroiled in, and personally offended by, the alleged misconduct that it could not impartially impose the convictions.

MR. SAGEL: Judge, that is absurd. That is absurd.
A. Yes.
MR. SAGEL: That is absurd, and I object.
THE COURT: You're going to continue shouting at me, aren't you?
MR. SAGEL: I was not shouting, your Honor.
THE COURT: Don't tell me what you were doing. That is not the proper way to interpose an objection, by suggesting something to be absurd. Will you follow the rules or not?
(No response)
THE COURT: Are you going to follow the rules or not?
MR. SAGEL: Yes, sir.
THE COURT: I suggest you do so.
MR. SAGEL: May I be heard on my objection?
THE COURT: No, *be seated.*
MR. SAGEL: *May my client be seated as well?*
THE COURT: *Did you hear what I said?*
MR. SAGEL: *May my client be seated as well, or is he to be flagellated in front of the jury?*
THE COURT: What was that, sir?
MR. SAGEL: Is he to just stand, as if they don't know each other, then to be identified to the Jury?
THE COURT: Take the jurors out.
(The Jury was removed from the Courtroom at 2:19 P.M.)
THE COURT: Come to the bar of the Court, sir. You're in contempt of this Court, sir. You are fined $200. Take him into custody. We will recess.
MR. SAGEL: May I please be heard your Honor, on the record?
THE COURT: You will not be heard sir, by me in the fashion you choose to address me. You conducted yourself in a most unprofessional manner. You have been sitting here all morning shouting at this Court. I have all regard for your zealousness. You are entitled to struggle on behalf of your client, if you choose. But we have certain rules here you are apparently not familiar with.

If you have an objection to interpose, you do so, the Court rules on it, you be quiet after that. *You are not to suggest to the Court that your client is being flagellated before the jury. You are in contempt, sir,* and consequently you have been fined. Take him into custody. (Counsel was taken into custody. Recessed at 2:20 P.M.)."

(Emphasis supplied)

Although there was obvious friction between the court and appellant during the next two days, the court did not hold appellant in contempt again until the third day of trial when a district attorney, Mr. Henry, was cross-examining a defense investigator. The subject of this cross-examination was an interview the district attorney thought the witness had conducted with the complainant. Appellant sought to point out that the interview had been conducted by Joseph Block, Esquire, another attorney of the Defender Association:

"MR. HENRY: This conversation that took place, how long did it take; five seconds?

A. I guess maybe fifteen minutes; I suppose twenty minutes.

MR. HENRY: You said you were out there twenty minutes—ten minutes and just before on direct examination didn't you tell the jury—

MR. SAGEL: No your Honor, I think he's mistaken—

THE COURT: Do you have an objection.

MR. SAGEL: I have an objection.

THE COURT: It is overruled.

MR. SAGEL: Mr. Block said that. He's mistaken.

MR. HENRY: If that's the case, I'll withdraw that.

MR. SAGEL: Thank you.

THE COURT: The sun is setting, Mr. Sagel."

At the end of the day, after excusing the jury, the court summarily held appellant in contempt for these statements.[3]

---

3. At the hearing at the end of the day, the court explicitly stated that the remarks set forth in the text above formed the basis of the second conviction. Although the court in its opinion again stated

In its opinion in support of the contempt citations, the court concluded:

"That counsel persisted despite warnings and instruction cannot be read less than contempt . . . overzealous-

that these remarks were "the immediate cause of the contempt citation," it also attempted to justify the convictions by noting that it had overlooked at least three instances of "argumentive comments," three instances where appellant objected to interrogation of witnesses by the court and two instances of "remarks sarcastic in nature."

The first purportedly "argumentive comment" occurred at sidebar conference:

"MR. SAGEL: That's not it.

THE COURT: . . . I'll overrule your objection. Objection overruled.

MR. SAGEL: Judge, may I say one more thing?

THE COURT: Objection overruled.

MR. SAGEL: If I understand the District Attorney's statement, what the mother is going to say, she's going to say if someone had—

THE COURT: Objection overruled."

(End of side bar conference)

The second such comment is the following:

"THE COURT: . . . If you want to pursue that further, you should ask her if she remembers specific questions.

MR. SAGEL: But if she doesn't recall what was said—

THE COURT: Don't argue with me, just ask questions. If she doesn't remember, she can say it."

The third incident is the following:

"MR. SAGEL: May the witness answer the question proposed by the District Attorney?

THE COURT: He wasn't stopped from answering anything.

MR. SAGEL: He was interrupted, your Honor. He started to answer. I believe he was interrupted.

THE COURT: Sit down."

None of these instances demonstrates improper conduct by appellant. At most, they show that at certain times during the trial, appellant misunderstood the substance of testimony or the import of the court's replies to his statements.

At three different times, as noted by the trial court, appellant objected to the court's interrogation of witnesses. To do so, of course, was his right. See, e. g., *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924) (questioning of witnesses by court proper only if within certain bounds). In each instance, appellant's objection was respectfully entered. One example of the three cited by the trial court will serve to demonstrate this point.

"MR. SAGEL: May I respectfully object to his Honor's question.

THE COURT: You are overruled."

These objections could not properly serve as the basis for any conviction of contempt.

The two allegedly sarcastic remarks are as follows:

ness that disrupts a trial is a gross immaturity in all who practice or indulge it. To permit this individual to shout down a Court, or indulge epicene outbursts of anger while he performs some arcane mating dance with the jury or the audience is simply to give license to childish effrontery. We believe his conduct was deliberate contempt, that in fact obstructed the orderly process of trial. We believe his contempt was designed not only to disrupt the Court, but to obstruct the trial in an effort to present or

"MR. SAGEL: Judge, I object to that.
THE COURT: It's overruled. This is cross-examination.
MR. SAGEL: Except that's not a fact in the case, your Honor.
THE COURT: Overruled."

"MR. HENRY: Objection.
MR. SAGEL: Can I ask a question?
MR. HENRY: About what?
THE COURT: Yes, about what?
MR. SAGEL: Judge, I assume that the rules that applied to me apply to the District Attorney as well, is that correct, sir?
THE COURT: Yes, they do. Do you find some fault with that?
MR. SAGEL: No, I would just object to the District Attorney—
THE COURT: You are objecting to what?
MR. SAGEL: To the objection, the reason should be stated on the record.
THE COURT: Yes.
MR. SAGEL: That's what I object to, your Honor."

Appellant's comments do not appear sarcastic. In the second exchange, any sarcasm would not seem attributable to appellant.

We find no misconduct in the instances the trial court purported to overlook. Thus, to the extent that the trial court may have sought to imply that these incidents were connected to the one for which it held appellant in contempt on the third day, the connection must be rejected. Likewise, to the extent that the trial court may have sought to indicate that the second incident for which it held appellant in contempt was the climax of a series of provocations by appellant, that implication must also be rejected. Compare *In Re Buckley*, 10 Cal.3d 237, 110 Cal.Rptr. 121, 514 P.2d 1201 (1973) with *In re Carrow*, 40 Cal.App.3d 924, 115 Cal.Rptr. 601 (1974).

The trial court in its opinion referred to other alleged misconduct which occurred after the remarks which formed the basis of the second conviction for contempt. The Commonwealth has also cited to other parts of the record to demonstrate incidents of alleged misconduct engaged in by appellant. We may consider none of these references. The references of the court are irrelevant because they concern conduct which occurred after the events in controversy. The references of the Commonwealth cannot be considered because

avoid issues and inferences otherwise beyond the scope of the rules. More, we believe his conduct, particularly in light of the many warnings, a deliberate attempt to poison the record with his conduct so as to ultimately vitiate the proceedings." [4]

## I

██ Courts unquestionably have inherent power to punish willful misconduct which obstructs a fair and orderly trial. *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975); *Commonwealth v. Patterson*, 452 Pa. 457, 308 A.2d 90 (1973); accord, *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §§ 6.3, 6.5(ii), 7.1 (Approved Draft, 1972). This power includes the authority to impose summary criminal contempt. *Commonwealth v. Mayberry*, 459 Pa. 91, 327 A.2d 86 (1974); *Snyder's Case*, 301 Pa. 276, 152 A. 33 (1930); *United States v. Wilson*, supra.

"The court has inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings."

the trial court did not purport to rely on these instances of alleged misconduct.

4. Appellant, after filing of briefs and oral argument, submitted a letter to this Court criticizing the trial court for delaying filing of its opinion in support of Garrison's convictions until after appellant had officially filed an appeal for Garrison in the Superior Court. The Commonwealth responded to this letter and sought to present new grounds for denying appellant relief. We emphatically condemn both parties' attempts, in violation of the Rules of Appellate Procedure, to inject arguments not of record. Pa.R.A.P. 2501(a); cf. *Commonwealth v. Jasper*, 472 Pa. 226, 372 A.2d 395 (1976) (appellate court may not consider facts not of record); *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976) (same); *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974) (same).

ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 7.1 (Approved Draft, 1972); accord, *Commonwealth v. Patterson*, supra, 452 Pa. at 464, 308 A.2d at 94; *United States v. Proffitt*, 498 F.2d 1124, 1128 (3rd Cir. 1974), cert. denied, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

When acting to uphold its authority, however, a court must use the least possible power and should first consider less severe remedies such as civil contempt before imposing summary criminal contempt. *In re Martorano*, supra; *United States v. Wilson*, supra; *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 6.3 (Approved Draft, 1972). "The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate." *Shillitani v. United States*, supra at 371 n.9, 86 S.Ct. at 1536 n.9. Following the principle of *Shillitani* and the ABA Standards, appellate courts have reversed convictions for summary criminal contempt where a cautionary instruction to the jury would have restored order or negated any ill effects of counsel's behavior, see *United States ex rel. Robson v. Oliver*, 470 F.2d 10 (7th Cir. 1972); *In re Carrow*, 40 Cal.App.3d 924, 115 Cal.Rptr. 601 (1974), where civil or nonsummary criminal contempt would have served the trial court's purpose, *United States v. Marra*, 482 F.2d 1196 (2d Cir. 1973), or where some other effective sanction was available, see *In re McConnell*, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) (trial court erred in using power of summary criminal contempt where counsel did not carry out threat to disobey order of court); see generally *United States v. Fisher*, 477 F.2d 300 (4th Cir. 1973) (trial court may control lawyers by censuring them); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 6.5 (Approved Draft, 1972) (listing sanctions available).

■ The power to impose summary criminal contempt is available only for

"such conduct as created an open threat to the orderly procedure of the court and such flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed and punished, demoralization of the court's authority will follow."

*Jessup v. Clark,* 490 F.2d 1068, 1071 (3rd Cir. 1973) (quotation marks omitted); accord, *Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 394–95, 69 L.Ed. 767 (1925); *United States v. Marra,* supra at 1201. Only in such circumstances may a court subject a contemnor to punishment without the procedural protections otherwise accorded the criminally accused.

In this Commonwealth, the power of courts to inflict summary contempts is carefully limited. The Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041 (1962) provides:

"The power of the several courts of this commonwealth to . . . inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:

"I. To the official misconduct of the officers of such courts respectively;

"II. To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court;

"III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." [5]

5. Likewise, the Congress of the United States has restricted the power of the federal courts to impose summary criminal contempt. See *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *In re McConnell,* 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962). 18 U.S.C. § 401 (1969) provides:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

By F.R.Crim.Pro. 42(a), this contempt power may be exercised summarily. Because the federal statute is identical in all material re-

Each of these subsections is designed to reach a particular type of conduct.

## A.

■ In *In re Johnson,* 467 Pa. 552, 359 A.2d 739 (1976) we described the scope of subsection I. That subsection

> "permits the courts . . . to compel their officers properly to perform their ministerial duties. For example, sheriffs must serve process, court reporters must record and transcribe testimony and prothonotaries must receive, date and file documents. . . . Subsection I authorizes the court to punish the misconduct of any of the day to day functions necessary to the administration of justice."

Id. 467 Pa. at 556, 359 A.2d at 741; accord, *Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 459, 100 L.Ed. 474 (1956). A lawyer is not an "officer" subject to punishment by contempt under this provision. *Cammer v. United States,* supra at 407–08, 76 S.Ct. at 460–01; accord, *Bloom v. Illinois,* 391 U.S. 194, 206, 88 S.Ct. 1477, 1484, 20 L.Ed.2d 522 (1968) (dictum); *In re Brown,* 147 U.S.App.D.C. 156, 454 F.2d 999, 1003 (1971).

## B.

■ Under subsection II,

> "parties must obey decrees and orders, witnesses must appear when subpoenaed, jurors must present themselves when called. There must be a formal order directed to a specific person or group of persons, but the refusal to comply need not occur in the court's presence."

*In re Johnson,* supra, 467 Pa. at 556, 359 A.2d at 741 (dictum). A conviction of contempt for violation of a court order can be sustained only if the order or decree was "definite, clear, specific and left no doubt or uncertainty" in the mind of the person to whom it was addressed of the

spects to the Pennsylvania contempt statute, this Court looks to federal decisions for guidance in interpreting 17 P.S. § 2041. See *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977); *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976).

conduct prohibited. *Richmond Black Police Officers v. City of Richmond, Va.,* 548 F.2d 123, 129 (4th Cir. 1977); *United States v. Joyce,* 498 F.2d 592, 596 (7th Cir. 1974); *In re Brown,* supra, 147 U.S.App.D.C. at 165 n.49, 454 F.2d at 1008 n.49. "The long-standing salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." *Ford v. Kammerer,* 450 F.2d 279, 280 (3rd Cir. 1971); accord, *United States v. Christie Industries,* 465 F.2d 1002 (3rd Cir. 1972). Compare *United States v. Christie Industries,* supra (injunction gave fair warning of prohibition of sale of specified product) with *Ford v. Kammerer,* supra (contempt reversed because court order contained "no prohibitory language explicitly addressed" to the appellant's act) and *In re Rubin,* 378 F.2d 104 (3rd Cir. 1967) (no violation of court order where question existed whether the appellant's conduct fell within prohibition of interference with certain property).

Contempt under subsection II is justified only if the contemner had notice of the specific order or decree, *East Caln Township v. Carter,* 440 Pa. 607, 269 A.2d 703 (1970); *Commonwealth v. Gaston,* 460 Pa. 385, 333 A.2d 779 (1975) (plurality opinion); accord, *Finney v. Arkansas Board of Corrections,* 505 F.2d 194, 213 (8th Cir. 1974); *In re Rubin,* 378 F.2d 104 (3rd Cir. 1967); see *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977), the act constituting the violation was volitional, *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977); accord, *United States v. Seale,* 461 F.2d 345, 368 (7th Cir. 1972), and the contemner acted with wrongful intent. *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976); accord, *Pennsylvania v. Local 542, International Union of Operating Engineers,* 552 F.2d 498, 510 (3rd Cir. 1977); *In re Williams,* 509 F.2d 949, 960 (2d Cir. 1975); *In re Brown,* supra, this Court has adopted the standard of intent prevailing in the federal courts that the contemner "knows or should reasonably be aware that his conduct is wrongful." *Commonwealth v. Washington,* supra, 470 Pa. at 203, 368 A.2d at 265; accord, *Commonwealth v. Washington,* supra, 466 Pa. at 508, 353

A.2d at 807; *United States v. Marx,* 553 F.2d 874, 876 (4th Cir. 1977); *Pennsylvania v. Local 542,* supra at 510; *United States ex rel. Robson v. Oliver,* supra at 13; *United States v. Seale,* supra; see ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 7.1 (Approved Draft, 1972) (judge has power to punish willful obstructions) and § 7.2(i) (Approved Draft, 1972) (contempt available for "willfully contemptuous" conduct).

Contempt convictions for willful violations of court orders, obstructing a judicial proceeding, have been upheld where an attorney failed to appear as directed at a hearing. See *United States v. Lespier,* 558 F.2d 624 (1st Cir. 1977); *United States v. Marx,* supra; *Douglas v. First National Realty Corp.,* 177 U.S.App.D.C. 409, 543 F.2d 894 (1976); compare *In re Niblack,* 155 U.S.App.D.C. 174, 476 F.2d 930, cert. denied, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973) (willfulness demonstrated by disregard of explicit warnings and previous noncompliance) with *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977) (no willful misconduct in failure to appear where judge knew that attorney had conflicting court engagement and record did not show that attorney received notice of expected appearance) and *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976) (contempt reversed where late appearance was caused by neglect to set alarm). Appellate courts have also upheld contempt convictions imposed where a party willfully disobeyed an injunction, *United States v. Eichhorst,* 544 F.2d 1383 (7th Cir. 1976); *Mitchell v. Fiore,* 470 F.2d 1149 (3rd Cir. 1972), cert. denied sub nom. *Fiore v. Brennan,* 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973), a consent decree, *United States v. Barnette,* 546 F.2d 187 (5th Cir. 1977), cert. denied, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977), or any of a variety of court orders. See *United States v. Quade,* 563 F.2d 375 (8th Cir. 1977) (trucker violated order prohibiting certain shipments); *United States v. Mitchell,* 556 F.2d 371 (6th Cir. 1977) (defendant refused to supply ordered voice exemplar); *Mazzetti v. United States,* 518 F.2d 781

(10th Cir. 1975) (photographer violated court rule against picture taking in certain parts of courthouse); *In re Brown,* supra, 147 U.S.App.D.C. at 161 n.24, 454 F.2d at 1004 n.24 (attempt by disbarred attorney to undertake legal representation) (dictum); *Atlas Corporation v. DeVilliers,* 447 F.2d 799 (10th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 939, 30 L.Ed.2d 809 (1972) (debtor's attempt to block levy upon execution); *United States v. Martin,* 525 F.2d 703 (2d Cir. 1975), cert. denied, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975) (witness refused to obey court order to answer prosecutor's question). But see *In re Williams,* supra (contempt reversed where witness's defiance of court order was not an intentional obstruction of the proceedings).

## C.

Finally, misconduct occurring in or near the courtroom falls under subsection III, which "grants the court power to ensure that lawsuits will be heard in a manner conducive to the just and orderly resolution of the issues presented." *In re Johnson,* supra, 467 Pa. at 557, 359 A.2d at 741. Trial courts normally punish allegedly contemptuous behavior of trial counsel in court under this provision or its federal analogue. See *Commonwealth v. Johnson,* supra; *McMillan v. Mountain Laurel Racing, Inc.,* 467 Pa. 266, 356 A.2d 742 (1976); *Pennsylvania v. Local 542,* supra; *United States ex rel. Robson v. Oliver,* supra; cf. *Commonwealth v. Haefner,* 470 Pa. 392, 368 A.2d 686 (1977) (defendant); *Tenenbaum v. Caplan,* 454 Pa. 1, 309 A.2d 428 (1973) (witness); *Commonwealth v. Patterson,* supra (defendants); *In re Williams,* supra (witness); *United States v. Abascal,* 509 F.2d 752 (9th Cir.), cert. denied, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975) (spectator); *United States v. Proffitt,* supra (defendant).

Subsection III, like its federal counterpart, 18 U.S.C. § 401(1), requires proof beyond a reasonable doubt of (1) misconduct, (2) in the presence of the court, (3) committed with intent to obstruct the proceedings, which (4) obstructs the administration of justice. *In re Johnson,* supra,

467 Pa. at 557, 359 A.2d at 742; *United States v. Seale,* supra at 366–67; see ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §§ 6.3, 6.5, 7.1, 7.2 (Approved Draft, 1972). No satisfactory definition of contemptuous misconduct has been developed. Perhaps the best definition is that misconduct is behavior that is inappropriate to the role of the actor. *United States v. Seale,* supra; see cases cited in Part III, infra. An attorney engages in misconduct if his behavior is calculated to hinder the search for truth. *In re Dellinger,* 461 F.2d 389, 400 (7th Cir. 1972); see *United States v. Schiffer,* 351 F.2d 91 (6th Cir. 1965), cert. denied, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966) (contempt upheld where attorney attempted to pressure court into ruling favorably by accusing court of being a tool of the government). Misconduct occurs in the presence of the court if the court itself witnesses the conduct or if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice. *United States v. Wilson,* supra, 421 U.S. at 315 n.6, 95 S.Ct. at 1806 n.6; *United States v. Seale,* supra. A contemner acts with wrongful intent if he "knows or should reasonably be aware that his conduct is wrongful." *United States v. Seale,* supra at 368 (same standard for subsection II). An obstruction of the administration of justice is a significant disruption of judicial proceedings. See *In re Johnson,* supra; ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 6.5 (Approved Draft, 1972). What is required is a showing of actual, imminent prejudice to a fair proceeding or to preservation of the court's authority. *In re Johnson,* supra (no contempt where counsel's statement to jury that judge and prosecutor shared signal system caused no disruption); *United States v. Seale,* supra at 370. This danger "must not be remote or even probable; it must immediately imperil." *In re Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972); accord, *In re McConnell,* supra (contempt reversed where attorney failed to carry out threat to disobey court order); *United States v. Seale,* supra at 370.

■ Courts require a high likelihood of imminent disruption because a lesser standard would deter vigorous courtroom advocacy. *In re Dellinger,* supra at 398. "It is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their client's cases." *In re McConnell,* supra, 370 U.S. at 236, 82 S.Ct. at 1292. In *Bloom Discipline Case,* 423 Pa. 192, 223 A.2d 712 (1966), this Court stated that under the Canons of Professional Responsibility

> " 'The lawyer owes "entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability," to the end that nothing be taken or withheld from him, save by the rules of law, legally applied. *No fear of judicial disfavor* or public unpopularity should restrain him from full discharge of his duty. . . .' "

Id. 423 Pa. at 196, 223 A.2d at 714 (emphasis in original). Thus, that remarks are injudicious, id., an affront to the dignity or sensibility of the court, *Offutt v. United States,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); accord, *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *United States v. Seale,* supra at 369; *In re Johnson,* supra, 467 Pa. at 560, 359 A.2d at 743, or even disrespectful or insulting, *United States ex rel. Robson v. Oliver,* supra at 14; *In re Dellinger,* supra at 400, will not, without more, justify conviction for summary criminal contempt.

> "The 'heat of courtroom debate' may prompt statements which are ill-considered and might later be regretted. *In Re Hallinan,* 71 Cal.2d 1179, 81 Cal.Rptr. 1, 459 P.2d 255 (1969). Substantial freedom of expression should be tolerated in this area since '[J]udges are supposed to be men of fortitude, able to thrive in a hardy climate.' *Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546."

*In re Dellinger,* supra at 400; accord, *In re Johnson,* supra, 467 Pa. at 560, 359 A.2d at 743. Only in an atmosphere where counsel feels secure in actively and zealously presenting his client's cause can a fair and thorough proceeding be

assured. "Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting in their client's behalf." *In re Dellinger,* supra at 400.

## H

Before examining whether sufficient evidence exists to sustain the convictions, we must determine which subsection of 17 P.S. § 2041 the court relied upon in imposing each conviction. We must make this determination because the trial court failed to specify any statutory provision either at the time it imposed the convictions or in its opinion. This omission raises a problem of due process, for a criminally accused is entitled to fair notice of the charges against him. *Commonwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86 (1974); accord, *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *United States v. Brannon,* 546 F.2d 1242 (5th Cir. 1977); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 7.4 (Approved Draft, 1972). If the court did not give appellant sufficient notice of the charges to enable him to present an argument in response, due process would require this Court to reverse the convictions. See *Taylor v. Hayes,* supra. Because the court did not specify the charges against appellant, we must search the record to determine which subsection formed the authority for the convictions and if appellant can reasonably be said to have understood that he had been charged under that subsection. See *Commonwealth v. Africa,* 466 Pa. 603, 626, 353 A.2d 855, 866 (1976) (plurality opinion).

The court could not have acted under subsection I because that provision does not extend to attorneys. *Cammer v. United States,* supra; *In re Brown,* supra. Even if attorneys were subject to that provision, appellant, when held in contempt, was exercising professional discretion by objecting to a line of cross-examination. He therefore was not performing a ministerial duty under subsection I. See *In re Johnson,* supra.

When imposing the first contempt, the court could not have been acting under subsection II because appellant had not violated any order or ruling of the court.[6] Thus, the only possible statutory authority for the first conviction was subsection III. We therefore will consider the legality of the first conviction only on the basis of that provision.

In imposing the second conviction, the court could have acted under either subsection II or subsection III because appellant had allegedly violated a ruling of the court. At the close of the third day of trial, the court held a short hearing at which it convicted appellant of the second contempt. At that hearing, the court stated that it was fining appellant because he had refused "to acquiesce in the rules of the court and your conduct is bordering the absolutely unprofessional." At other times during the hearing, the court again referred to appellant's alleged violation of the rules of the court and his alleged misconduct. From these comments, we cannot determine whether the court relied upon subsection II or subsection III. The court's reference

---

**6.** The Commonwealth argues that one indication of appellant's misbehavior was his disregard of a court order. The record does not show that appellant violated a court ruling. The court had overruled appellant's objection and directed him to be seated. The record does not disclose whether appellant took his seat, but it is clear that he was not held in contempt for any failure to sit. The record does show that appellant acquiesced in the court's ruling that the defendant stand. His question was whether the defendant, having arisen as ordered, could now sit. On its face, the court's ruling did not clearly and specifically prohibit this question. See *Richmond Black Police Officers v. City of Richmond, Va.,* 548 F.2d 123, 129 (4th Cir. 1977); *United States v. Joyce,* 498 F.2d 592 (7th Cir. 1974). Therefore, appellant cannot be said to have violated any ruling of the court. See *Ford v. Kammerer,* 450 F.2d 279 (3rd Cir. 1971) (contempt for violation of court order reversed because order contained "no prohibitory language explicitly addressed" to the appellant's act); *In re Rubin,* 378 F.2d 104 (3rd Cir. 1967) (contempt reversed where question existed whether the appellant's conduct fell within court's order prohibiting interference with certain property); *Finney v. Arkansas Board of Corrections,* 505 F.2d 194, 213 (8th Cir. 1974) (no contempt of court order where court's opinion only "strongly implied" that specific act must be performed); cf. *In re Joyce,* 506 F.2d 373, 378 (5th Cir. 1975) (no failure to obey court order where court "requested" certain conduct); *In re LaMarre,* 494 F.2d 753, 758-59 (6th Cir. 1974) (same).

to a refusal to acquiesce in the rules of the court suggests that the court had subsection II in mind, but the references to misconduct indicate that subsection III formed the basis of the second conviction.

In its opinion, the court once more stated that appellant had refused to obey rulings of the court, but the clear emphasis was on appellant's purported misbehavior. The court charged appellant with conduct of a "continuous, abusive nature," referred to "overzealousness that disrupts a trial," asserted that appellant had attempted to "shout down the court," unleashed an "epicene outburst of anger" and engaged in "childish effrontery." The court concluded that appellant's conduct "obstructed the orderly process of trial," was "designed to disrupt the Court" and to "obstruct the trial" and was "a deliberate attempt to poison the record with his conduct so as to ultimately vitiate the proceedings." Thus, it appears that the court viewed subsection III, which reaches misconduct obstructing the administration of justice, as the statutory source of authority for the second contempt conviction as well as for the first.

Several other considerations compel this conclusion. Appellant apparently believed that he had been charged in both contempts under subsection III, for the primary argument in his brief was that his conduct did not cause an obstruction of the proceedings and that he lacked intent to cause any such obstruction. Moreover, the Commonwealth in its brief did not challenge appellant's assumption. To the contrary, the Commonwealth, which failed to specify the relevant subsection, also appeared to believe that the relevant subsection was subsection III, for its argument was that the court acted to quell a disruption. In short, the court did not specify the statutory source of its authority to impose contempt, the language of the court was ambiguous but indicated that it relied upon subsection III, appellant apparently believed that he had been charged under that subsection, and the Commonwealth did not alert this Court to the proper statutory authority and appeared to acquiesce in appellant's assumption. In these circumstances, to test the

convictions under subsection II would reward the obscurity of the trial court and the Commonwealth while subjecting appellant to review under a provision he reasonably did not believe was at issue. Perhaps most importantly, because an offense under subsection II contains different elements from those of subsection III, we would deprive appellant of due process if we sustained the contempt convictions under subsection II when the trial court did not give appellant notice of charges under that provision. By reviewing the second conviction under subsection III, we avoid the risk of such a violation of due process.

Therefore, both of appellant's convictions must be tested according to the standards of 17 P.S. § 2041(III).

## III

With the standards of subsection III in mind, we do not believe that appellant's statement triggering the first contempt citation was misconduct punishable under subsection III. Appellant had objected to the court's direction that the defendant stand to be identified by the mother. The court overruled the objection and stated, "be seated." The defendant rose and was identified by the complainant's mother. Appellant then asked whether his client could also be seated, and inquired, "is he to be flagellated in front of the jury?" The court requested appellant to repeat his comment, to which appellant replied, "Is he just to stand, as if they don't know each other, then to be identified to the jury?" Although appellant rephrased his remark in unemotional terms, the court dismissed the jury and held appellant in contempt.

Appellant engaged in misconduct under subsection III only if his expression, "is he to be flagellated in front of the jury?" exceeded the bounds of zealous advocacy. In *In re Johnson*, supra, defense counsel asserted in closing argument that the court and the district attorney employed a system of signals, and, when asked by the court how long his summation would be, responded, "I don't know how long I will be judge, I will speak as long as necessary." We held

that these statements were not misconduct punishable under subsection III. In *Bloom Discipline Case*, supra, this Court reversed a conviction for criminal contempt where counsel had objected to the court's disposition of the proceedings as unfair and disputed a fact asserted by the court, because we could not say that the statements were misconduct. In *McMillan v. Mountain Laurel Racing, Inc.*, supra, counsel, when admonished that the court "will hear no more comment," replied, "I will not operate under an ultimatum like that." This Court held that counsel's statement was not misconduct obstructing the administration of justice.

Other jurisdictions have reached the same result on comparable facts. In *United States ex rel. Robson v. Oliver*, supra, counsel in a trial involving charges of mutilation of draft records asked a witness if he had seen a sign at the end of the hall proclaiming, "Abandon Ye All Hope Who Enter Here," provoking laughter, applause and shouts. Although it described this question as provocative and inflammatory, the court held that counsel had not engaged in misbehavior supporting contempt. In *In re Hallinan*, 71 Cal.2d 1179, 81 Cal.Rptr. 1, 459 P.2d 255 (1969), defense counsel stated that "the restrictions that have been imposed upon the evidence are unfair to the defendant." The California Supreme Court reversed counsel's conviction for summary criminal contempt imposed by the trial court. Similarly, in *In re Carrow*, 40 Cal.App.3d 924, 115 Cal.Rptr. 601 (1974), counsel objected, "Your Honor, I submit this trial is becoming a joke." The appellate court found these words "ill-chosen," but not contemptuous misbehavior. Appellant's conduct was less offensive than the statements made in these decisions where convictions of contempt were reversed on appeal.

The contrast between these cases and appellant's comments, and those cases where courts have upheld determinations of misbehavior, is clear. In *United States v. Schiffer*, supra, counsel's accusation that the court was a tool of the government and otherwise unfair carried the imminent risk that the court might be pressured into awarding favorable

rulings to the defense. Accord, *In re Buckley*, 10 Cal.3d 237, 110 Cal.Rptr. 121, 514 P.2d 1201 (1973), cert. denied, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974) (counsel's charge during trial that "This Court obviously doesn't want to apply the law" created imminent threat to court's authority by alleging judicial dishonesty).

■ Appellant's conduct does not rise to the level of the misbehavior in *United States v. Schiffer*, supra, and *In re Buckley*, supra. Appellant's statement did not exceed the "outermost limits of his proper role" and "[hinder] rather than facilitate the search for truth." *In re Dellinger*, supra at 400; see D. Dobbs, Contempt of Court, 56 Corn.L.Rev. 183, 188 (1971). We therefore reverse appellant's first conviction of summary criminal contempt.[7]

## IV

■ When held in contempt on the first day of trial, appellant had been instructed by the court that the procedure for objections was to rise, announce an objection and silently await the court's ruling. Counsel was not to offer any reasons for his objection unless the court specifically so requested.[8] Appellant was held in contempt a second time

7. Because we reverse on this ground, we do not consider whether appellant's conduct caused an obstruction to the administration of justice or whether appellant intended to obstruct justice.

8. We note that the court's rule of procedure for objections prohibiting statement of the grounds for objections except by permission, is contrary to recommended standards. ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.7 (Approved Draft, 1972) provides:
   "Duty of judge on counsel's objections and requests for rulings. "The trial judge should respect the obligation of counsel to present objections to procedures and to admissibility of evidence, to request rulings on motions, to make offers of proof, and to have the record show adverse rulings and reflect conduct of the judge which counsel considers prejudicial. Counsel should be permitted to state succinctly the grounds of his objections or requests; but the judge should nevertheless control the length and manner of argument."
   Accord, *United States v. Mathis*, 175 U.S.App.D.C. 341, 535 F.2d 1303 (1976) (quoting ABA Standard with approval); *In re Dellinger*, 461 F.2d 389 (7th Cir. 1972). The Commentary to this section notes

when, after the court overruled his objection to a line of cross-examination, he explained why he was protesting. Appellant's persistence, however, did not cause any obstruction of the orderly process of trial or create an imminent threat of significant disruption. Thus, the second conviction for contempt must also fall.

It is well established under subsection III that "the mere showing of noncompliance with a court order . . . is never sufficient, alone, to prove contempt." *Commonwealth v. Haefner*, 470 Pa. 392, 396, 368 A.2d 686, 688 (1977); see *McMillan v. Mountain Laurel Racing, Inc.*, supra (contempt reversed despite counsel's violation of court order to proceed); *Tenenbaum v. Caplan*, supra (contempt reversed despite witness's violation of specific court order prohibiting testimony on certain subject); *United States v. Snyder*, 502 F.2d 645 (4th Cir. 1974) (contempt reversed despite defendant's violation of court order requiring him to stand); *Jessup v. Clark*, supra (contempt reversed despite counsel's violation of court order to appear at designated time). Under this subsection, allegedly contemptuous conduct will not justify imposition of summary criminal contempt except where it causes an obstruction of the administration of justice. *In re Johnson*, supra; accord, *United States v. Seale*, supra at 371; see *McMillan v. Mountain Laurel Racing, Inc.*, supra; compare *United States v. Snyder*, supra (contempt conviction reversed where violation of court order to rise from seat did not cause obstruction to proceedings) with *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775

that "This standard is intended to admonish the trial judge to exercise self-restraint and fairness in permitting counsel for the prosecution and for the defense to perform their duties," and that "the standard affirms the right of counsel . . . to make known the grounds of the objection." The reason for this rule is that general objections are disfavored, e. g., *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590, cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 39 L.Ed.2d 404 (1973); *Commonwealth v. Marshall*, 287 Pa. 512, 135 A. 301 (1926); *Cullum v. Wagstaff*, 48 Pa. 300 (1864), and that "it is through such colloquy that the judge may recognize his mistake and prevent error from infecting the record." *In re Dellinger*, supra at 399.

(1977) (contempt upheld where witness's refusal to testify as ordered caused considerable expense and delay and may have precluded opportunity for government to bring an indictment against suspected criminals).

Appellant's conduct did not cause any obstruction of justice. There was no disruption or delay in the proceedings or an imminent threat of such disruption. In fact, the district attorney admitted that he was in error and withdrew the disputed question. Because the court waited until the end of the day to impose the contempt, there was no delay in the proceedings. It is even unclear whether the trial court thought appellant's statements were contemptuous when uttered, for the court at that time said only, "Mr. Sagel, the sun is setting," and waited until the end of the day to inform appellant that he was in contempt of court. Compare *In re Johnson,* supra (contempt reversed where counsel's statement that the district attorney and the judge shared a signal system was brief, caused no disruption or delay, was neither an assault on the authority of the court nor a vicious personal attack on the judge and the jury was not improperly influenced) with *Commonwealth v. Mayberry,* 434 Pa. 478, 255 A.2d 131 (1969) (plurality opinion), vacated on other grounds, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (contempt upheld where defendant interrupted proceedings by interfering with charge to jury, called trial judge a "hatchet man for the State," "a dirty S.O.B.," and a "bum," and asserted judge suffered mental illness).

In *McMillan v. Mountain Laurel Racing, Inc.,* supra, counsel and the court engaged in a dispute over counsel's course of cross-examination. The court twice warned counsel that if he did not proceed with the questioning as ordered, the court would impose sanctions. When counsel refused to comply, the court summarily held him in criminal contempt.[9]

9. The following colloquy occurred between counsel and the court:
"THE COURT: Mr. Gorr, you may cross-examine.
CROSS EXAMINATION
BY MR. GORR:
Q. Mr. Townsend, do you expect to be in this city tomorrow and Friday?

382

This Court reversed because counsel's conduct did not obstruct the administration of justice even though it had caused a slight delay in the proceedings. In *Tenenbaum v. Caplan,* supra, we reversed a contempt conviction where a witness, twice warned by the court not to testify concerning a certain point, testified in violation of the court orders. We held that summary contempt was unjustified where the misconduct did not interrupt the trial or disrupt the proceed-

> A. I have engagements out of the city tomorrow and Friday.
> THE COURT: That is interesting, but what is the purpose of it?
> MR. GORR: Is there an objection to my question, Your Honor?
> THE COURT: Yes. Let's stick to this case. Let's not get into social intercourse. The jury will disregard the last question. Proceed with questioning the witness with matters relevant to this case.
> MR. GORR: I object to the words—
> THE COURT: Mr. Gorr, will you please proceed with the case.
> MR. GORR: I am proceeding with my case.
> THE COURT: Proceed and you will entertain no—
> MR. GORR: The demeanor in this courtroom—
> THE COURT: Mr. Gorr, are you going to proceed with this case right now? If not, we will take appropriate sanctions.
> MR. GORR: I am proceeding with the case, Your Honor.
> THE COURT: Then go ahead. Ask a question.
> MR. GORR: I asked a question, Your Honor.
> THE COURT: That question is totally improper.
> MR. GORR: If my question is to be ruled proper—
> THE COURT: Proceed, Mr. Gorr.
> MR. GORR: I am proceeding, Your Honor.
> THE COURT: Ask a question.
> MR. GORR: Your Honor, there is unfinished business on the record which I would like to finish.
> THE COURT: Mr. Gorr—
> MR. GORR: Yes, Your Honor.
> THE COURT: You will either ask a question relevant to the subject matter of this case within the next fifteen seconds or you are going to have a fine imposed of $100 as being in contempt of this Court. Do you understand that you have fifteen seconds?
> MR. GORR: I understand.
> THE COURT: I will hear no more comment.
> MR. GORR: I will not operate under an ultimatum like that. If you wish to impose sanctions, you do so.
> THE COURT: Proceed to ask a question. You will forthwith pay a fine of $100 or be committed to the Jail until you do.
>     Mr. Bodnar, call the sheriff. Mr. Beinkemper, you may cross-examine this witness."

*McMillan v. Mountain Laurel Racing, Inc.,* 467 Pa. 267 ·69, 356 A.2d 742, 743 (1976).

ings. See *Commonwealth v. Haefner*, supra (contempt reversed where witness testified on subject despite court order not to do so).

Two federal decisions illustrate the line which separates advocacy from obstruction under subsection III. In *In re Dellinger*, 370 F.Supp. 1304 (N.D.Ill.1973), counsel continued to argue after the court had overruled an objection. Despite three specific orders to cease argument, counsel continued to press his point.[10] On remand from the court of appeals, the

10. The following is the colloquy between counsel and the court:
"The Court: I will let my ruling stand.
Mr. Weinglass: Your Honor—
The Court: I said I'd let my ruling stand, sir.
Mr. Weinglass: Your Honor must permit us the opportunity of responding to that.
The Court: I have permitted you. I have permitted Mr. Kunstler to speak, and now you [sic, 'may' omitted] ask another question of this witness.
Mr. Weinglass: Reverend Abernathy was mentioned as an officer of the National Mobilization.
The Court: Mr. Weinglass—
Mr. Dellinger: He was co-chairman.
The Court: I direct you not to—
Mr. Weinglass: He was national co-chairman.
Mr. Foran: Your Honor, there were seven individuals who are still in this case as part of this indictment. There is no national—
The Court: Will you continue with the examination—
Mr. Weinglass: Your Honor, I would like to ask Mr. Foran what relationship the unidentified speaker had with the National Mobilization. His speech was—
The Court: I order you to continue with his examination, sir.
Mr. Weinglass: I understand your Honor's sensitivity to what Reverend Abernathy said at that particular time.
The Court: And I direct that that remark go out.
Mr. Weinglass: And Senator McCarthy also spoke.
The Court: And I direct the jury to disregard it.
Mr. Weinglass: Two witnesses referred to what Senator McCarthy had to say, and he is not a defendant here.
Mr. Foran: On cross examination, your Honor. On cross examination by these men, not on direct examination by the government.
Mr. Weinglass: On direct examination—
The Court: Will you comply with my order?
Mr. Kunstler: Your Honor, I am going to answer the second part of the argument.
Mr. Weinglass: Richard Goodwin, when he was called as a witness by us, referred to the exact words by Senator McCarthy.
The Court: Will you comply with my order?

district court held that counsel's failure to obey the court's ruling and orders to proceed was not an obstruction of the proceedings. By contrast, in *Pennsylvania v. Local 542*, supra, the court of appeals upheld convictions where counsel was twice summarily adjudged in contempt. The trial court imposed the first conviction after counsel persisted in stating the reason for his objection after the court overruled the objection and directed counsel not to state his reason. Before the court summarily held counsel in criminal contempt, it had specifically directed him seven times not to state the reason for the objection, had specifically warned him four times that if he failed to comply he would be held in contempt and had delayed the proceedings to speak with counsel in chambers. Here, appellant caused no delay and exhibited no defiance to the court. Appellant did not cross

> Mr. Kunstler: What about the second part of the argument that the mule train was mentioned on direct?
> The Court: I will ask you to sit down.
> Mr. Kunstler: Your Honor, but that is not—your Honor ruled that was irrelevant.
> The Court: I cannot let two lawyers conduct an examination and handle the objections.
> Mr. Kunstler: I am not conducting the examination. I raised the second argument and that was not answered, that the SCLC Mule Train, if the mule train was afraid of the demonstrators, why did Ralph Abernathy speak to them the next day?
> The Court: Will you comply with my order?
> Mr. Weinglass: If your Honor will not permit the jury to hear what Reverend Abernathy said—
> Mr. Foran: Listen to that, your Honor. Just listen to that. Isn't that classical?
> The Court: I will strike that last remark, and don't make it again. I direct the jury to disregard it. Mr. Marshall, anyone who laughs aloud at the rulings of the court will please—other than the defendants—be asked to leave the court room.
> Mr. Kunstler: Your Honor, I am entitled to an answer to my objection?
> The Court: I have heard you.
> Mr. Kunstler: Well, the prosecutor has not responded. He has ignored it.
> The Court: I have heard you.
> Mr. Weinglass: I just want the record to show that Reverend Abernathy was an officer of the National Mobilization.
> The Court: Oh, Mr. Weinglass. Mr. Weinglass. I am sorry—"
> *In re Dellinger*, 370 F.Supp. 1304, 1336-37 (N.D.Ill.1973) (brackets in original).

the line which separates *In re Dellinger,* 370 F.Supp. 1304, supra, from *Pennsylvania v. Local 542,* supra, and therefore appellant's second conviction must be reversed.[11]

In reversing appellant's convictions for summary criminal contempt, we emphasize that in a proper case a court retains the power to impose summary criminal contempts. Further, for those situations not justifying this drastic sanction, less severe sanctions, such as civil contempt and nonsummary criminal contempt, are available. See *United States v. Shillitani,* supra; ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §§ 6.3, 6.5 (Approved Draft, 1972).

Neither of appellant's convictions of contempt is supported by sufficient evidence. We therefore reverse appellant's convictions and discharge him. *Commonwealth v. Africa,* supra.

Judgments reversed and appellant discharged.

Mr. Justice Packel did not participate in the consideration or decision of this case.

MANDERINO, J., joins this opinion and files a concurring opinion.

EAGEN, C. J., and O'BRIEN, J., concur in the result.

POMEROY, J., files a concurring opinion.

NIX, J., concurs in the result.

POMEROY, Justice, concurring.

I concur in the decision of the Court that on this record appellant was not guilty of criminal contempt of the trial court. I cannot, however, agree with much that is said in the plurality's prolix opinion, and deem it appropriate to give my reasons in this separate opinion.

11. Because we reverse on this ground, we need not consider whether appellant engaged in misconduct and, if so, whether he did so with intent to obstruct the proceedings.

## I.

At the outset, I emphatically reiterate my disagreement with Mr. Justice ROBERTS' construction of our basic contempt statute.[1]  See my dissenting opinion in *In re Johnson,* 467 Pa. 552, 561, 359 A.2d 739 (1976) (POMEROY, J., dissenting, joined by JONES, C. J. and EAGEN, J.).  I would simply add here that, in my view, reliance on *Cammer v. United States,* 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956), for the proposition that a lawyer is not to be considered an "officer of the court" within the meaning of subsection I of the Pennsylvania contempt statute, *supra* note 1, is quite misplaced.  In *Cammer* the Supreme Court of the United States was presented with detailed legislative history of the federal contempt statute compelling the conclusion that lawyers were not "officers" of the federal courts within the meaning of that statute.[2]  *See* 350 U.S. at 403- 08, 76 S.Ct. 456.  There is no such Pennsylvania history indicating that our General Assembly had any intention to use the term "officer" in anything other than its commonly accepted meaning.  That meaning, as a perusal of our cases clearly shows, see, *e. g., In re Shigon,* 462 Pa. 1, 10 -11, 329 A.2d 235

1. Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041 (1962).  The statute provides:
    "The power of the several courts of this Commonwealth to .  . inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:
    "I.  To the official misconduct of the officers of such courts respectively;
    "II.  To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court;
    "III.  To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."

2. 18 U.S.C. § 401.  That statute provides:
    "§ 401.  Power of court
    "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
    "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
    "(2) Misbehavior of any of its officers in their official transactions;
    "(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

(1974); *In re Schofield,* 362 Pa. 201, 204 n. 1, 66 A.2d 675, 677 n. 1 (1949), and cases cited therein, includes a lawyer appearing before a court of this state.[3] *See also* Act of April 14, 1834, P.L. 333, § 69, 17 P.S. § 1603 (1962) (re-enacted in Section 2522 of the Judicial Code, 42 Pa.C.S., with slight changes in wording), which requires an attorney, as part of his oath of office, to swear to act "with all good fidelity, as well to the court as to the client."

It should also be noted that under the plurality's construction of the Act of 1836, "what is sauce for the goose is sauce for the gander." That is to say, if the statute cannot be used to punish and stop brazenly unethical conduct in open court by defense counsel, neither can it be so used with respect to prosecutorial misconduct. The consequence in many cases will be that the only remedy, should the trial end in conviction, will be to correct an unfair trial by reversing and remanding for a new trial. *E. g., Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976). Trial judges should not be so circumscribed, and trials should not be susceptible to such easy taint. See, *e. g., Commonwealth v. Potter,* 478 Pa. 251, 267 & n. 8, 386 A.2d 918, 925 & n. 8 (1978) (opinion in support of affirmance).

## II.

I find particularly disturbing two other statements in the plurality opinion, notwithstanding that they are merely dicta. The first is the pronouncement that a court should "first consider less severe remedies such as civil contempt before imposing summary criminal contempt," *ante* at 366, and that non-summary criminal contempt too is usually preferable to criminal contempt. *Ante* at 385. In civil contempt, of course, the contemnor "has the keys to the jail in his pocket" through his ability to purge himself of the contempt by complying with the court's order. Can the coercive effect of that sanction have any usefulness when the contemptuous

3. As we have been admonished by the legislature: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) (Supp.1977).

conduct is over and done with, when the offensive words have already been uttered, and when the damage caused by noncompliance with ethical standards cannot be undone? And must a trial judge remain silent while a fair trial is being jeopardized by unprofessional conduct of lawyers, and put aside the imposition of sanctions until the trial is over, at which point the only remedy is a new trial?[4] To both questions the answer must surely be "no." Furthermore, the suggestion that civil contempt is the preferable course is difficult if not impossible to reconcile with the views recently expressed by three members of this Court in *In re November 1975 Special Investigating Grand Jury,* 475 Pa. 123, 379 A.2d 1313 (1977) (opinions in support of affirmance by ROBERTS, J. and POMEROY, J., both joined by O'BRIEN, J.). In situations where swift action is necessary to vindicate the court's authority, see *id.* 475 Pa. at 128 -136, 379 A.2d at 1318--19 (opinion in support of affirmance of ROBERTS, J.), 475 Pa. at 136--140, 379 A.2d at 1321 (opinion in support of affirmance of POMEROY, J.), the two remedies suggested in today's plurality opinion—civil contempt and non-summary criminal contempt—are well nigh useless.[5]

The other observation in Mr. Justice ROBERTS' opinion that prompts a response is the assertion that the second contempt conviction here at issue must be treated as having been imposed under subsection III of the Act of 1836, *supra* note 1, in order to avoid a violation of due process. Although I agree that the trial judge's adjudication of contempt was ambiguous and that a fuller explanation would have been desirable, *cf.* Fed.R.Crim.P. 42(a), the plurality's apparent insistence that summary criminal contempt cannot be imposed unless the court literally "reads the Riot Act" or

4. The availability of a new trial may in some cases be constitutionally suspect, for the Double Jeopardy Clause may stand in the way. See generally, *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978) (opinion in support of affirmance).

5. This is not to say, of course, that the use of the summary contempt power is the only means available to vindicate the court's authority. In the usual case reprimands at side bar or in open court can and should be used before the contempt power is resorted to.

recites the Act of 1836 in open court, see *ante* at 372, seems to me to be quite unwarranted. It has been well said by the Supreme Court of the United States that appellate judges are not to "imprison the discretion of trial judges within rigid mechanical rules," *Offutt v. United States,* 348 U.S. 11, 15, 75 S.Ct. 11, 14, 99 L.Ed. 11 (1954) (Frankfurter, J.), and that contempt of court is a most inappropriate area for broad generalizations. *Mayberry v. Pennsylvania,* 400 U.S. 455, 463–64, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (Douglas, J.). And as we noted in *Commonwealth v. Mayberry,* 459 Pa. 91, 102, 327 A.2d 86, 91 (1974) (citations and footnote omitted): "[N]o need exists to fit criminal contempt, a crime sui generis, into the mold of procedures for more commonplace offenses. This Court has in the past recognized that due process is a flexible concept and not one wed to fixed formalities." I would leave any discussion of due process questions that this case might present for a time when the constitutional point is necessary to a decision.

## III.

Addressing now the factual situation of the case before us, the appraisal of the lawyer's conduct should, in my view, be undertaken in light of the factors set forth in my dissenting opinion in *In re Johnson, supra:*

"Unlike the lay person, the lawyer is duty bound to manifest an attitude of professional respect toward the court and its processes. His conduct in the courtroom can have a great impact on the extent to which the proceedings are perceived as fair and dignified by juror, defendant, witness, and spectator. He possesses the unique capability of denigrating the proceedings through eloquently clothed charges of impropriety. Unlike the lay person, he can obstruct justice without being overtly belligerent and without taking up a great deal of the court's time. His carefully chosen words, softly spoken and briefly put though they may be, can submerge the dignity of

the proceedings in insinuations of improprieties. The impact of the lawyer's action must, therefore, be assessed in the light of these considerations." 467 Pa. at 565, 359 A.2d at 746.

Viewing Mr. Sagel's conduct under this approach, I agree that the two acts involved did not warrant a finding of contempt. In my judgment, the defense lawyer's question to the court, "May my client be seated as well, or is he to be flagellated in front of the jury?", while ill-chosen, and his short interruption of the substitute prosecutor's cross-examination can only be viewed as *de minimis.* The record reveals a hotly contested trial marked by some friction between the trial judge and defense counsel, but it cannot be said that Mr. Sagel failed to show "an attitude of professional respect toward the court and its processes," *In re Johnson, supra,* or that the conduct complained of constituted "insults of the trial judge, and tactics taken from street brawls and transported to the courtroom." *Mayberry v. Pennsylvania, supra,* 400 U.S. at 462, 91 S.Ct. at 504. There simply was no need for the trial court to hold Mr. Sagel in contempt in order to vindicate its authority.[6]

**6.** I agree with Mr. Justice ROBERTS that the trial judge is not to be commended for his practice of forbidding counsel to state on the record his reasons for an objection to a question, an answer or a ruling. *Ante* at 379 n. 8. But cf. *Pennsylvania v. Local 542, International U. Of Operating Engrs.,* 552 F.2d 498 (3d Cir. 1977). Worth repeating, however, is the admonition of Mr. Justice Jackson in *Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 96 L.Ed. 717 (1952), *quoted with approval in In re Dellinger,* 461 F.2d 389, 398 (7th Cir. 1972):

"Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal."

Moreover, neither *Dellinger* nor *In re McConnell,* 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), also relied upon in the plurality opinion, stand for the proposition that a lawyer is given "a grant of immunity for all conduct undertaken in good faith" on behalf of his client. 461 F.2d at 398.

Because I agree that the record reveals insufficient evidence for contempt convictions under any part of the Act of 1836, *supra* note 1, I concur in the result.

MANDERINO, Justice, concurring.

I join in the opinion of the Court; however, I do not endorse the holding of all cases from other jurisdictions cited therein. In some of those cases, conduct which clearly did not constitute contempt was held to be contemptuous. Secondly, I do not agree that any of appellant's conduct in this case could have constituted contempt under subsection II of the Act of June 16, 1836, P.L. 784 § 23, 17 P.S. § 2041 (1962). Subsection II is limited to the failure to comply with a formal order, see *In re Johnson,* 467 Pa. 552, 556, 359 A.2d 739, 741 (1976).