J-S40037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON PARKER | : | |
| | : | |
| Appellant | : | No. 3318 EDA 2014 |

Appeal from the Judgment of Sentence October 29, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  MC-51-MD-0000593-2014

BEFORE:   OTT, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 02, 2017**

Jason Parker appeals from the judgment of sentence imposed on October 29, 2014, in the Court of Common Pleas of Philadelphia County, after he was found in contempt.  Parker was sentenced to a term of 5 months and 29 days of non-reporting probation.  In this timely appeal, Parker argues the trial court erred in finding him in contempt of its verbal order to leave the courthouse, where he was required to re-enter the courthouse pursuant to subpoena.  Further, Parker asserts the trial court erred in finding him in contempt for other actions he claims were taken outside the presence of the court.  Finally, Parker argues, having been convicted of a summary offense, the 5 month, 29 day probationary sentence

_____

[*] Former Justice specially assigned to the Superior Court.

is illegal. After a thorough review of the submissions by the parties, relevant law, and the certified record, we vacate the judgment of sentence and reverse the conviction of contempt.

Before we begin our analysis of this matter, we take brief note of the procedural history. In April 2014, Parker was banished from the Philadelphia Criminal Justice Center (CJC) by the Honorable Rayford A. Means after several attorneys complained that Parker was interfering with their ability to interact with their clients. Later that day, Parker returned to the CJC and was brought before Judge Means, and a contempt proceeding ensued. Eventually, on August 19, 2014, Parker was found in contempt for a variety of actions.[1] On October 29, 2014, Parker was sentenced and he appealed. Parker sought to represent himself and the matter was remanded to the trial court to conduct a *Grazier* hearing. One hearing was held and Parker withdrew his application to represent himself and accepted appointed counsel. Shortly thereafter, Parker reasserted his desire to represent himself and another *Grazier* hearing was held on February 12, 2016. At that hearing, Judge Means found Parker in contempt for disobeying an order to be silent. Parker has also appealed that decision. Although not consolidated, both appeals are now before this panel.[2]

_____

[1] The details of the contempt will be fully discussed *infra*.

[2] Parker's subsequent appeal is listed consecutively to the instant appeal, at J-S40038-17.

Instantly, the record demonstrates that Parker was charged with and found guilty of violating 42 Pa.C.S. § 4137(3).  **See** Parker's Brief at 20-21. Despite an order signed by the trial court indicating Parker violated Section 4137(3),[3] we believe the proper section at issue is Section 4132(3), which states:

> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>
> * * *
> (3) The misbehavior of any person **in the presence of the court**, thereby obstructing the administration of justice.

42 Pa.C.S. § 4132(3) (emphasis added).

Our standard of review is as follows:

---

[3] We believe this is a typographical error as Section 4137 addresses the contempt powers of district justices regarding the failure to compensate the victim of a crime for injury or damages.  Specifically, Section 4137(3) states:

> District justices shall have the power to issue attachments and impose summary punishments for criminal contempts of a district justice court in the following cases:
>
> (3) Failure to comply with an order of a district justice in a criminal proceeding to compensate the victim of the criminal conduct for the damage or injury sustained by the victim.

Judge Means is not a district justice and, in fact, the First Judicial District, Philadelphia, has no district justices.  Further, the record contains no evidence that Parker failed to comply with an order to make any such payment. While this section has no applicability to the instant matter, Parker has recognized this error and has not objected.

> [I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, an appellate court is confined to an examination of the record to determine if the facts support the trial court's decision.

> *Commonwealth v. Jackson*, 367 Pa.Super. 6, 532 A.2d 28, 31-32 (1987)(internal citations omitted); *Accord* *Ricci v. Geary*, 447 Pa.Super. 609, 670 A.2d 190, 191 (1996). In making this examination: "we must evaluate the entire record and consider all evidence actually received." *Commonwealth v. Falana*, 548 Pa. 156, 161, 696 A.2d 126, 128 (1997) quoting *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986).

> A court's power to find an individual in criminal contempt is conferred by Section 4132 of the Judiciary Code, which provides in relevant part:

>> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>> * * *
>> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

> 42 Pa.C.S.A. § 4132(3). Consequently, to sustain a conviction for direct criminal contempt under this provision there must be proof beyond a reasonable doubt: (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice. *Williams v. Williams*, 554 Pa. 465, 469, 721 A.2d 1972, 1073 (1998); *Commonwealth v. Martorano*, 387 Pa.Super. 79, 563 A.2d 1193, 1197 (1989), *appeal denied* 529 Pa. 632, 600 A.2d 952 (1991).

*Commonwealth v. Williams*, 753 A.2d 856, 861 (Pa. Super. 2000).

- 4 -

On April 23, 2014, at approximately 11:00 A.M., Judge Rayford Means ordered Parker from the CJC. However, shortly thereafter, Parker reentered the building pursuant to subpoena to attend a court proceeding before a different judge. Parker was seen by a sheriff and taken before Judge Means. At 11:46 A.M., a contempt hearing was convened. Judge Means explained the history:

> THE COURT: This is a contempt hearing for Mr. Jason Parker.
>
> [ADA]: Yes, Judge.
>
> THE COURT: Who was, earlier today, April 23rd, ordered out of the building, based on a complaint – a number of complaints that he was soliciting people in the hallways. As recently as 30 minutes ago, Mr. Shaka Johnson came in and told me that Mr. Parker had passed out his cards, telling people he's affiliated with Mr. Shaka Johnson.
>
> I ordered [Parker] out of the building because I felt that he was interfering with justice by soliciting unknowing people and asking them for money to represent them, when he is not licensed.

N.T. Contempt Hearing, 4/23/2014, at 3.

Judge Means briefly recounted the substance of the complaints against Parker that led to the order and determined there was sufficient cause to hold a full contempt hearing, which he scheduled for May 6, 2014. This determination was made despite the fact that Judge Means was aware that Parker returned to the CJC in order to attend a different court hearing. This knowledge is amply demonstrated in the following exchange:

> THE COURT: I ordered you out of the building.
>
> PARKER: I left the building.

- 5 -

THE COURT: Then you came back in.

PARKER: I have a hearing at 11:30 in B-03, Your Honor.

THE COURT: No, no.

PARKER: I came back for my hearing.

THE COURT: You didn't tell me that.  If you –

PARKER: I came up to the sheriff, Judge.

THE COURT: - if that was true, you would have told me when we escorted you out of the building.

PARKER: I was –

THE COURT: But you never said that.

PARKER: - trying to talk to you.  You wasn't listening to me.

THE COURT: I was listening to you.  All right.

PARKER: I was trying to tell you I have a hearing today for me. Nobody –

THE COURT: Okay, Well, I'll contact B-05?

PARKER: B-03, in the basement.

N.T. 4/23/2014, at 7-8.

Following this exchange, Judge Means set Parker's bail at $500,000.00 and, at the request of the Commonwealth, lodged a detainer against Parker regarding the possible violation of Parker's probation on another matter.[4]

---

[4] In September, 2012, Parker was sentenced to 9 to 18 months' incarceration to be followed by 2 years of probation by Judge Angelo Foglietta after Parker's conviction on charges of fleeing or attempting to elude a police officer, 75 Pa.C.S. § 3733(a), and related charges.

The May 6, 2014 hearing was continued to May 20, 2014.[5] At the May 20, 2014 hearing, the following exchange occurred:

COURT OFFICER: All right. Let's go.

[COUNSEL]: Judge, I didn't have adequate time to speak with him. He doesn't understand what's happening at this point.

THE COURT: All right. I'm going to – I've got some witnesses who've got –

[ADA]: We're all here.

THE COURT: - to go, so I'm going to preserve their testimony.

[ADA]: Judge, he's already declared legally competent, so –

[COUNSEL]: It's not about legal competence. It's about somebody else was in the booth.

THE COURT: All right.

[ADA]: Oh, oh, that's fine.

[COUNSEL]: So I just got into the booth a minute ago.

THE COURT: All right. Let's go. Have a seat. All right, this is Commonwealth v. Parker.

[COUNSEL]: Well, Judge, he's – respectfully, Judge, he's starting to weigh his options as far as –

THE COURT: All right. Well, I want to preserve some testimony anyway, Whatever he wants to do, he can do, but right now, I'm moving forward. All right, Parker is number what on the list?

[ADA]: it's 47 –

---

[5] It is unclear if Parker remained in custody for the entire time between April 23, 2014 and May 20, 2014.

THE COURT: Forty-seven.

[ADA]: And 87 – Judge Foglietta's VOP, Judge.

THE COURT: **Mr. Parker, you are here because you – I found – this is a contempt hearing for you because I ordered you out of the Criminal Justice Center.** I ordered you out because I had gotten complaints from lawyers that you were practicing law in this building. And I asked you on that day that I put you out were you a lawyer.

PARKER: Right.

N.T. Contempt Hearing, 5/20/2014, at 4-5 (emphasis added).

On May 20, 2014, nine witnesses[6] were called to testify. All testimony concerned the allegation that Parker had either been practicing law without a license or had held himself out to members of the public to be a lawyer. The original accusation of contempt addressed only the alleged disobeying of the order to leave the CJC. The trial judge reiterates that reason at the beginning of the May 20, 2014 hearing. Although the trial judge had referred to some of Parker's actions which had led to his banishment, there was no specific indication that those actions would be raised, *sua sponte*, by the trial judge as separate acts of contempt. Indeed, it was not until the trial judge had realized Parker had a legitimate reason to have reentered the CJC that these other actions became the focus of contempt. Accordingly,

---

[6] Jennifer Muniz, Ashley Colwell, Mary Carlin, Shaka Johnson, Esq., Carrie Evans, Esq., Jordan Barnett, Esq., Victoria Sanita, Esq., Kathryn Cacciamani, Esq., and Lenora Clayton, Esq.

there is no indication in the certified record that Parker was given any notice of these allegations prior to the hearing.

All but one of Parker's actions testified to took place outside the physical presence of the trial court. The certified record is also free from any mention of an order or decree, other that the order to leave the CJC, Parker might have been violating. On April 23, 2014, despite the trial court knowing that Parker had a subpoena requiring him to be at the CJC that day,[7] the trial court scheduled a full contempt hearing for May 6, 2014.[8] After taking the testimony of several witnesses, the trial court continued the May 20, 2014 hearing to August 19, 2014, in order to take further testimony regarding Parker "sneaking"[9] back into the CJC on April 23, 2014.

At the close of the August 19, 2014 hearing, the trial court found Parker guilty of contempt which is the subject of this appeal. Specifically, the trial court stated:

> The Court: Okay. Mr. Parker, based on all of the information I have in front of me, based on the past hearings that we've had – you were in the courtroom on that day. I had to take you out. You had been here on a number of occasions. I find that, number one, you disrupted the operations of this courtroom.

---

[7] *See* N.T. Hearing, 4/23/2014, at 7-8.

[8] The May 6, 2014 hearing was continued until May 20, 2014.

[9] N.T. Hearing, 8/19/2014, at 9-10.

Number two, you disrupted the operations of the Criminal Justice Center by soliciting from people. And those other people can come in. Michelle, ask those witnesses to come in.

Court officer: Sure.

The Court: They've come here faithfully. Once again, I said that Mr. – let the record reflect that I offered Mr. Parker's right of allocution. I offered him the opportunity to take the witness stand and testify. Through his attorney, he has refused to do so, so let the record so reflect….

I find that you disrupted the courtroom operations here. I found that you disrupted the operations of the defense bar, specifically, the Defender Association, along with private counsel.

Specifically, I find that Kate Cacciamani had to be appointed on a case when Ms. Victoria Sanita of the Defender Association had to be removed because there was confrontation between you in which you confronted her in the anteroom, and she could no longer represent her client.

I find that you disrupted the practice of law by the private attorneys and by the Defender Association by soliciting clients out in this hallway, in this courtroom, and in other courtrooms. I find that you engaged in the practice of law illegally. You also were instructed to leave the Criminal Justice Center for the aforementioned reasons, and you returned.

You never, at any opportunity when I had to personally go out and get you, mention that you had any summary hearing in this courtroom. I'll also point out that when I did find out you had a hearing, I called and had it postpone[d] so your case was not dismissed, so that you did not get a bench warrant.

N.T. Hearing, 8/19/2014, at 10-12.

We begin our analysis with the trial court's determination that Parker acted contemptuously by reentering the CJC after he had been ordered out of the building. The order to leave the building is the only order Parker was charged with violating.

> Conviction of contempt for violation of a court order can be sustained only if the order or decree was "definite, clear, specific and left no doubt or uncertainty" in the mind of the person to whom it was addressed of the conduct prohibited.

***Commonwealth v. Garrison***, 386 A.2d 971, 977 (Pa. 1978) (citations omitted).

The certified record does not contain the exact language used by Judge Means in expelling Parker. However, the judge reiterated his order at the beginning of the April 23, 2014 contempt hearing wherein he simply stated he had ordered Parker out of the building. No time limit was ever established. A strict interpretation of the order, as related by Judge Means, indicates Parker absolutely complied. He did, in fact, leave the building. "The long-standing salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." ***Id***.

Were we to ignore the rule providing the defendant with the benefit of ambiguities and omissions, and presume that the expulsion was meant to last at least for the rest of the day, we cannot ignore the fact that the trial court recognized Parker had a legitimate subpoena requiring him to return to the CJC for a different hearing. In this respect, the order was overly broad. We can find no authority for the proposition that an order of expulsion overrides a subpoena requiring the subject to appear before another judge in the building in question. In light of the foregoing, Parker cannot be found in contempt of the order requiring him to leave the CJC.

The remaining allegations against Parker are that he misbehaved in the presence of the court, thereby obstructing the administration of justice. *See* Section 4132(3), **supra**.[10]

Initially, "No satisfactory definition of contemptuous misconduct has been developed." **Garrison**, 386 A.2d at 979. However, "An obstruction of the administration of justice is a significant disruption of judicial proceedings." **Id**. We believe this limits the powers of the court to find contempt to those actions that disrupt actual judicial proceedings. Accordingly, this would not include those actions the trial court characterized as disrupting the activities of the office of the Public Defender or the actions of a private attorney in the hallways of the CJC.

The Commonwealth seeks to expand the scope of "in the presence of the court" to include "outside the courtroom but so near thereto that it obstructs the administration of justice." **Commonwealth v. Falana**, 696 A.2d 126, 129 (Pa. 1997) However, this language is *dicta* in **Falana**, not holding, since the question in **Falana** was whether it was contemptuous for a defendant to threaten a witness in the courtroom, as the defendant was

---

[10] As explained above, it was not until Parker revealed he had legitimate business in the CJC on the day in question that these actions became, without formal notice to Parker, the subject of allegations of contempt.

being led from the courtroom, in a voice too low for the trial judge to have heard.[11]

Nevertheless, in examining the source of the language, we believe *Falana* misapprehended prior case law. *Falana* took that language at issue from *Commonwealth v. Garrison*, *supra*. *Garrison* provided an exceptional description of the three types of contempt described in Section 4132.[12] In describing contempt under subsection (3), which is the relevant subsection for this appeal, *Garrison* noted, "Trial courts normally punish allegedly contemptuous behavior under this provision or its federal analogue." *Id*. at 978. Later, in describing "the presence of court," *Garrison* states, "Misconduct occurs in the presence of court if the court itself witnesses the conduct or if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice. *United States v. Wilson*, *supra*, 421 U.S. [309] at 315 n.6" Footnote 6 reveals that the federal statute regarding contempt contains language not found in the Pennsylvania statute: "Rule 42 applies the contempt power defined in 18 U.S.C. § 401. That statute provides that a federal court has the power to punish by fine or imprisonment, at its discretion, such contempt of its

---

[11] Our Supreme Court specifically withheld deciding whether the same outcome was mandated if the trial judge was not on the bench. *Id*. at 129, n.5.

[12] Then 17 P.S. § 2041. The relevant language of Section 4132 is identical to that found in Section 2041.

authority as '[m]isbehavior of any person in its presence or *so near thereto* as to obstruct the administration of justice." **Id**. (emphasis added). The words, "or so near thereto" are conspicuously absent from the Pennsylvania statute. Accordingly, it appears that **Garrison** is describing the two definitions of "in the presence of court" found in the Pennsylvania statute and "its federal analogue."[13] Here, only the Pennsylvania statute is at issue.[14]

---

[13] In Pennsylvania, contemptuous conduct outside the presence of the court is prosecuted as indirect criminal contempt. "A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree occurred outside the presence of the court." **Commonwealth v. Brumbaugh**, 932 A.2d 108, 110 (Pa. Super. 2007) (citation omitted). No such contemptuous behavior occurred in this matter as the sole order in question was not violated.

[14] We also recognize that adding the "or so near thereto" language to the Pennsylvania statute violates any number of the rules of statutory construction. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S § 1921(b). There is nothing inherently ambiguous with the phrase "in the presence of the court" that requires the expansion to "or so near thereto." Also, pursuant to 1 Pa.C.S. § 1928, all statues addressing penal provisions are required to be strictly construed. **See** 1 Pa.C.S. § 1928(b)(1). Additionally, 1 Pa.C.S. § 1923(c) states: "Words and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof." 1 Pa.C.S. 1923(c). There is no indication that the phrase "or so near thereto" is in any way necessary to the proper interpretation of 42 Pa.C.S. § 4132. Also adding that phase would literally expand the scope of authority of the court to find and punish contemptuous behavior. Finally, we have seen nothing in our research to indicate the drafters of Section 4132 were unaware of the "federal analogue" to the Pennsylvania statute governing contempt. The federal law expressly expands the scope of the

*(Footnote Continued Next Page)*

Even if we expanded the language of section 4312(3), "the presence of the court, " to include activities that occurred outside the court's presence, but "near thereto", there was no testimony that the activities in the halls of the CJC caused a significant disruption of any judicial proceeding.

The only actions described by any witness that took place in a courtroom were described by Kathryn Cacciamani, Esq., who testified as follows:

> THE COURT: All right. Now, the - do you know the defendant – Jason – Attorney Jason Parker Wolf?
>
> WITNESS: I know – I have met Mr. Parker here in the CJC.
>
> THE COURT: All right. And how do you – under what circumstances? …
>
> WITNESS: I met Mr. Parker here in [Courtroom] 705. I was representing a client by the name of Lamar Jones, and Mr. Parker was seated in the courtroom on Mr. Jones' behalf, and Mr. Jones was in custody.
>
> THE COURT: All right. And what conversation did you have with him? Who did you represent?
>
> WITNESS: I was representing Mr. Jones.
>
> THE COURT: For the record, yes, Mr. Jones. All right.
>
> WITNESS: It was about the end of March, I believe.

*(Footnote Continued)* ⸻

statute beyond that described in Pennsylvania law. Had the drafters of the Pennsylvania statute been so inclined, we have found no reason why "or so near thereto" could not have been included in Section 4132.

THE COURT: Yes. And what, if anything, occurred between you and Mr. Parker?

WITNESS: Mr. Parker was approaching me, asking me if Mr. Jones was going to take a deal, and I wasn't sure of who Mr. Parker was, and I said I had to talk to Mr. Jones, and I wasn't going to speak to Mr. Parker until I spoke to Mr. Jones.

THE COURT: All right. And did he interfere with you any way in the conduct of business with your client?

WITNESS: Well, he was telling – he was telling me that he didn't think Mr. Jones should take a deal.

THE COURT: And what was – shouldn't take a deal?

WITNESS: Yes.

THE COURT: And what was the offer?

WITNESS: The offer was 11½ to 23 months and a period of probation. I can't remember the period of probation to follow.

THE COURT: Yes.

WITNESS: It was an F-2 robbery case, where the client had allegedly taken an object and hit the complainant over the head and stolen her purse.

THE COURT: Did he say he was related to the defendant?

WITNESS: He did not.

THE COURT: And did he say why he wanted the – why he didn't want the client to take the deal?

WITNESS: He – did he say that? I don't think so.

THE COURT: All right.

WITNESS: I talked to Mister - I went back and spoke with my client and I'm not going to talk about the nature of that with attorney client privilege, but Mr. Jones decided to take the deal. And it was also an immediate parole offer.

THE COURT: All right.

WITNESS: So he took it.

N.T. Hearing, 5/20/2014, at 78-80.

The conversation between Parker and Attorney Cacciamani took place in courtroom 705, but there is no evidence that court was in session at that time or that the judge was on the bench **and that** it caused a significant disruption of judicial proceedings as required by section 4132. In this instance, even when directly asked if Parker had interfered with her business with her client, Attorney Cacciamani would neither agree nor disagree. As described by Attorney Cacciamani, she refused to speak with Mr. Parker and thereafter spoke with her client who then accepted the offer. Accordingly, the encounter between Parker and Attorney Cacciamani does not qualify as contemptuous.

The testimony of Victoria Sanita, Esq, requires a closer examination of the allegedly contemptuous behavior by Parker. She provided evidence that, in the hallway outside the courtroom, Parker confronted Attorney Sanita while she was attempting to converse with a client. This confrontation unnerved Attorney Sanita to such a degree that she requested Judge Means to "conflict me out because I couldn't represent her with him meddling…" N.T. Hearing, 5/20/2014, at 74.[15] The certified record reflects that Attorney

---

[15] The client, Jennifer Muniz, testified earlier that she had paid Parker $100.00, and also worked for him passing out fliers, in exchange for Parker
*(Footnote Continued Next Page)*

- 17 -

Sanita was replaced by Attorney Cacciamani, who then interviewed the client without further interference from Parker. There is no evidence of record that courtroom proceedings were otherwise disrupted.

We do not condone or encourage any behavior that causes such discomfort to counsel that he or she feels the need to withdraw from representation. If this incident occurred in a federal court, there is little doubt that Parker's actions, occurring "so near thereto" the court, may be rightly considered as contemptuous. However, the CJC is not a federal court. Additionally, the certified record does not clearly demonstrate that *judicial* proceedings of the day in questions were significantly disrupted by Parker's actions that, we repeat, were outside the presence of the court.

Although we do not believe that Parker's actions, as described in the testimony herein, were contemptuous, this decision is not meant to ratify such actions either. Indeed, it appears from the record that Parker was arrested and charged with violating 18 Pa.C.S. § 4913, impersonating a holder of a professional license.[16] Had Parker conducted his "business" in the presence of the court, those actions might well have constituted contempt; however, as discussed above, those actions were not undertaken in the presence of the court. The requirement that contemptuous actions

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

providing some manner of "legal financial consulting." ***See*** N.T. Hearing, 5/20/2014, at 10.

[16] N.T. Hearing, 5/20/2014, at 115.

under section 4132(3) occur "in the presence of the court" is a clear statement of the scope of the court's authority to find contempt. We discern no authority to expand the scope of section 4132(3) to include actions taken "so near thereto" a courtroom, as described in federal law. Actions undertaken outside the presence of the court are addressed by indirect criminal contempt, which expands the physical scope of authority, but limits contempt to actions taken in violation of an actual decree or order. Therefore, we are required to vacate the judgment of sentence and reverse the conviction of contempt.[17]

Judgment of sentence vacated. Conviction reversed.

Judge Dubow joins this memorandum.

President Judge Emeritus Stevens concurs in the result.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/2/2017*

---

[17] Accordingly, we need not address Parker's claim regarding his sentence.